Chief Judge Desmond.
The suit is for libel and the question is as to the legal sufficiency of the complaint which has been dismissed by the Appellate Division.
*177 Plaintiff is a lawyer practicing in this State. Defendant Time Inc. publishes a magazine widely circulated in this State and elsewhere and known as “ Sports Illustrated ”. The magazine’s February 20, 1961 issue carried an article written by defendant Boyle entitled “Hail, Hail, the Gang’s All Here” which, so plaintiff asserts, contained maliciously false statements defaming him as a lawyer and as a man. The first cause of action says in effect that a particular paragraph (hereafter quoted) directly and falsely impugned plaintiff’s professional ability and standing. The second cause of action pleaded in the complaint quotes other parts of the magazine article and alleges that by the whole of the writing defendant intended to accuse plaintiff of deliberately giving erroneous legal advice to a client named D ’Amato “ in order that plaintiff would be in a position to replace D ’Amato as adviser and manager of Floyd Patterson, the Heavyweight Boxing Champion of the World ”. No special damages are pleaded.
The Appellate Division, reversing Special Term, held that “ The alleged libelous matter, read in the context of the entire article, cannot be fairly construed as imputing incompetency or unethical conduct by plaintiff, an attorney, in representing his client”. We disagree. We think the article could not unreasonably be taken by its readers to mean that plaintiff for his own selfish purposes gave his client deliberately misleading legal advice, to the client’s embarrassment and damage.
The article describes the “bizarre cast of characters” surrounding champion Patterson and including plaintiff as well as Patterson’s manager Cus D ’Amato whose license as a manager of boxers had earlier been revoked by the New York State Athletic Commission. D’Amato is described as “ The sole tragic figure in the lot * * * entangled in all sorts of legal snares ” and much of the material reads as if it came to writer Boyle from D ’Amato himself. One paragraph separately set out in the first cause of action reads thus: “ D’Amato also got into difficulty when he failed to answer a subpoena issued by State Attorney General Louis Lefkowitz. D’Amato says that November, who serves as attorney for both D ’Amato and Patterson, told him to ignore it, that the hearing had been postponed. D ’Amato did as he was instructed, but he was arrested, hauled into court, fined $250 and given a suspended sentence of *178 30 days in the workhouse. The case is now on appeal, but D ’Amato was to see Lefkowitz Tuesday and there were reports ‘ something might happen ’ to him.” If that were the whole of it there would probably be no defamation since, as we will assume, the rule still holds that language charging a professional man with ignorance or mistake on a single occasion only and not accusing him of general ignorance or lack of skill cannot be considered defamatory on its face and so is not actionable unless special damages are pleaded (Foot v. Brown, 8 Johns. 64, 68; Twiggar v. Ossining Print. & Pub. Co., 161 App. Div. 718). But there is a great deal more in addition to that quoted paragraph and a reading of the whole of it may well have left a sophisticated and sports-conscious reader of the magazine with the impression that plaintiff had indulged in highly unprofessional conduct.
Defendant Boyle’s description of the group surrounding champion Patterson is too long for reproduction in full here but we can describe or summarize it sufficiently to show its defamatory import. In so doing, we find it unnecessary to make a close distinction between the two causes of action which, indeed, should be treated as one, especially since the whole of this article is made part of each count. In cynical but sprightly style writer Boyle painted for his readers a word picture of shabby intrigue among a group of named persons including plaintiff, elbowing each other for preferred positions in the champion’s entourage. The writer at least intimated that their several ambitions were not unrelated to the huge financial return from championship boxing matches. If every paragraph had to be read separately and off by itself plaintiff would fare pretty well. But such utterances are not so closely parsed by their readers or by the courts and their meaning depends not on isolated or detached statements but on the whole apparent scope and intent (More v. Bennett, 48 N. Y. 472, 476). Plaintiff is a professional man. 11 If, on their face, they [the words] are susceptible in their ordinary meaning of such a construction as would tend to injure him in that capacity, they are libelous per se and the complaint, even in the absence of allegation of special damage, states a cause of action ” (Kleeberg v. Sipser, 265 N. Y. 87, 91-92). The courts “ will not strain ” to interpret such writings “ in their mildest and most inoffensive sense to hold them nonlibelous ” (Mencher v. Chesley, 297 N. Y. 94, 99). The words are to be construed not with the *179 close precision expected from lawyers and judges but as they would be read and understood by the public to which they are addressed (Sydney v. Macfadden Newspaper Pub. Corp., 242 N. Y. 208, 214). “ The casual reader might not stop to analyze, but could readily conclude that plaintiff is a crook and let it go at that ” (Van Voorhis, J., in Cassidy v. Gannett Co., 173 Misc. 634, 639).
Nowhere in the article is there a charge in so many words that plaintiff’s motives were selfish and sinister when he got his client D ’Amato into difficulties by telling him to ignore the subpoena. But suggestion lurks in such statements as this:11 With D ’Amato somewhat out of the Patterson picture November has filled the vacuum ” and this: ‘ ‘ November does all he can to keep Patterson content with his services.” No single sentence or declaration of alleged fact is directly and boldly defamatory but a jury should decide whether a libelous intendment ‘ ‘ would naturally be given to it by the reading public acquainted with the parties and the subject-matter ” (Cassidy v. Gannett Co., 173 Misc. 634, 640, supra).
Defendant argues the case as if the few sentences quoted in this opinion were the whole basis of the plaintiff’s complaint. We do not so understand plaintiff’s theory. He points out that, taken as a whole, the picture presented by the magazine article was — or the jury might say it was — of a group of ambitious people each using his wits to grab for money and power — and one of them, plaintiff, doing it by methods inconsistent with his professional obligations. The gloss or interpretation which plaintiff would have the jury apply is derived not from external facts but is one which a reader might not irrationally attach to the article as written. The jury will be asked not to alter or expand the meaning of the actual words but to adopt a possible construction of them and it will be for the jurors to determine in which of two possible senses the words were used (see Morrison v. Smith, 177 N. Y. 366, 369; First Nat. Bank v. Winters, 225 N. Y. 47, 50; Hoeppner v. Dunkirk Print. Co., 254 N. Y. 95,104).
The judgment should be reversed, the motion to dismiss denied and the order of Special Term reinstated, with costs in this court and in the Appellate Division.