JACKIE MASON, Appellant-Respondent, v. EDWARD SULLIVAN et al., Respondents-Appellants.

First Department, June 28, 1966.

*W. Bernard Richland* of counsel (*Paul O'Dwyer* with him on the brief; *O'Dwyer & Bernstien,* attorneys), for appellant-respondent.

*Carleton G. Eldridge, Jr.,* of counsel (*Gordon T. King* with him on the brief; *Coudert Brothers,* attorneys), for respondents-appellants.

STEUER, J. Plaintiff sues in defamation, the complaint consisting of five causes of action. Special Term sustained the first cause of action and dismissed the others. We agree as to the first cause and also that the fifth adds no necessary element to the others and should have been dismissed. Discussion is therefore limited to the second, third and fourth causes of action.

It appears that plaintiff is a comedian. The defendant Sullivan conducts a weekly television show. Defendant Precht is a television producer. The plaintiff appeared on the "Ed Sullivan Show" on October 18, 1964. In the course of his act defendant Sullivan appeared on the stage and by means of signals sought to convey to plaintiff that his time was about to expire. Plaintiff, in a manner which he claims accorded with his usual style of presenting his material, responded with words and gestures. It was these that provoked the acts by defendants that are the basis of the action.

The second cause of action, against Sullivan alone, alleges that, following the said performance, Sullivan told reporters of two newspapers, intending that the same should be published, that he barred plaintiff from further appearances on his show because of plaintiff's "obscene gestures, offensive conduct, insubordination and gross deviation from material agreed upon."

The third cause of action, against both defendants, alleges that they composed a telegram making the same charges and sent the same to persons engaged in the promotion and management of professional entertainers. The fourth cause of action alleges that defendants composed a press release containing the same matter and caused it to be circulated to newspapers, magazines and other news media. All the causes of action contain appropriate allegations of malice.

The gist of the alleged defamation lies in the charge that plaintiff in his act had recourse to obscenity. To this charge defendants argue practically every defense that can be set up in an action for defamation. Suffice it to say that some, as for instance "reply", relying on Campo v. Paar (18 A D 2d 364) have no application at all to the facts; others, such as truth, raise questions of fact which cannot be disposed of on motion. The claim that it was conclusively established by a showing of a film of the show at Special Term that the gestures were obscene was expressly rejected by Special Term, the court finding that they were not.

The two contentions urged seriously in this court were that the defamations were not actionable because of the "single

instance '' rule and because they consisted of fair comment on the acts of a public character. We believe neither applies.

The '' single instance '' rule has application to charges which imply that plaintiff is unfit to carry on his profession or calling. In essence it is that a charge that plaintiff in a single instance was guilty of a mistake, impropriety or other unprofessional conduct does not imply that he is generally unfit (*Twigger* v. *Ossining Print. & Pub. Co.*, 161 App. Div. 718; *Amelkin* v. *Commercial Trading Co.*, 23 A D 2d 830). But the rule is quite otherwise where the deviation from professional conduct shows a lack of character or a total disregard of professional ethics (*November* v. *Time, Inc.*, 13 N Y 2d 175). Then the words would certainly injure him in his professional capacity and are libelous per se (*Kleeberg* v. *Sipser*, 265 N. Y. 87).

The second contention is based on *New York Times Co.* v. *Sullivan* (376 U. S. 254). The gravamen of that decision is that a State law defining libel cannot operate as a deterrent to the constitutionally guaranteed rights of free speech and a free press. But it is not every publication which is protected, nor does the law of every State so operate. The particular publication under consideration by the Supreme Court is thus described: '' The present advertisement, as an expression of grievance and protest on one of the major public issues of our time, would seem clearly to qualify for the constitutional protection '' (*New York Times Co.* v. *Sullivan, supra,* p. 271). Despite the importance that public adulation has led figures in the entertainment field to give to their own acts and utterances, it can hardly be said that our society is so engrossed in frivolity that the reaction of an entrepreneur to the antics of a comedian constitutes a major public issue. Moreover, the State law under consideration was found to make actionable any false derogatory statement regardless of the good faith of the defendant. Even the constitutional guarantee would not apply to a publication made with actual, as distinct from presumed, malice (see *Sullivan, supra,* pp. 279–280). For these reasons the defenses alleged do not destroy the causes of action.

The order should be modified on the law to reinstate the second, third and fourth causes of action, with costs and disbursements to plaintiff-appellant-respondent.

McNALLY, J. P., STEVENS, CAPOZZOLI and BASTOW, JJ., concur.

Order, entered on February 14, 1966, unanimously modified, on the law, to the extent of reinstating the second, third and fourth causes of action, with $50 costs and disbursements to plaintiff-appellant-respondent.