A. E. HOTCHNER, Plaintiff-Appellee,

v.

Jose Luis CASTILLO–PUCHE, Defendant,

and

Doubleday & Company, Inc.,
Defendant-Appellant.

No. 674, Docket 76–7479.

United States Court of Appeals,
Second Circuit.

Argued Feb. 14, 1977.

Decided March 23, 1977.

Mervin Rosenman, New York City (Simon J. Hauser, New York City, on the brief), for plaintiff-appellee.

Robert M. Callagy, New York City (Satterlee & Stephens, James F. Dwyer and James F. Rittinger, New York City, on the brief), for defendant-appellant.

Henry R. Kaufman, New York City, on the brief, for amicus curiae, Association of American Publishers, Inc.

Before LUMBARD and TIMBERS, Circuit Judges, and WYATT, District Judge.*

LUMBARD, Circuit Judge:

Doubleday & Company, Inc. appeals from a judgment of $2 compensatory damages and $125,000 punitive damages for libel and invasion of privacy entered by Judge Brieant on a jury verdict after a one-week trial in April 1976 in the Southern District. The plaintiff is A. E. Hotchner, a successful writer and lecturer who was a friend of Ernest Hemingway's and published a memoir about him, *Papa Hemingway,* in 1965. The suit involves unfavorable remarks about Hotchner made in *Hemingway in Spain,* an English translation of personal reminiscences by a Spanish writer Jose Luis

Castillo-Puche, which was published by Doubleday in 1974.

The district court determined that for first amendment purposes Hotchner in his relationship with Hemingway was a public figure.[1] Liability must therefore rest on clear and convincing proof that the defendant published with knowledge of falsity or with reckless disregard for truth. Because the evidence on this issue is inadequate to support the jury's verdict, we reverse with instructions that plaintiff's amended complaint be dismissed.

Castillo-Puche's *Hemingway: Entre la Vida y la Muerte* was published by Ediciones Destino in Spain in 1967. The book collects in 388 pages the author's impressions of Hemingway which were garnered in Spain and Cuba in the late 1950's. It makes roughly twenty references to Hotchner, who was a travelling companion of Hemingway's in Spain.

At trial, a professor of Spanish who had written her Ph.D. thesis on Castillo-Puche testified that he had written a number of novels, earning several literary awards and establishing himself as "an important novelist." She also described Ediciones Destino as a "very prestigious" publisher. A journalist employed by a major Spanish newspaper testified that Castillo-Puche was "one of the most important reporters in Spain."

Doubleday editor Kathryn B. Medina testified that she first became interested in the book after it was favorably mentioned in the *Saturday Review* in 1969. She asked two experienced literary critics to read the Spanish version, and both returned with positive reports on it. Doubleday proceeded to acquire the English-language rights to the book from Ediciones Destino and to engage an experienced translator, Helen Lane, for the translation.

In editing Lane's translation, Medina noticed that the book contained very uncomplimentary references to Hotchner. She

* Sitting by designation.

1. *Hotchner v. Castillo-Puche,* 404 F.Supp. 1041, 1043–47 (S.D.N.Y.1975). Hemingway has been acclaimed as one of the greatest American authors. He won the Pulitzer Prize for his *The Old Man and the Sea* in 1953 and the Nobel Prize for Literature in 1954.

had the passages reviewed by William Austin, a member of the Doubleday contracts department, and between them they agreed that some eleven statements should be eliminated or toned down.[2] Medina relayed this proposal to Castillo-Puche by letter. He vouched for the statements but accepted the suggested modifications.[3]

As published in 1974, the translation contained six passages which the jury ultimately found to be libellous. In five of these Castillo-Puche describes Hotchner as a manipulator, a "toady," a "hypocrite" who exhibited "two-faced behavior" toward Hemingway's true friends and "put up a very good front as [Hemingway's] mild-mannered, obedient servant," an "exploiter of [Hemingway's] reputation" who was "never open and above board." The sixth passage is one in which Hemingway, referring to Hotchner, tells Castillo-Puche: "I don't really trust him, though."

At trial, Hotchner testified at length regarding his close friendship with Hemingway. He produced letters from Hemingway containing expressions of appreciation and devotion. Three other members of Hemingway's circle testified that Hemingway had the greatest respect and affection for Hotchner.

Hotchner also testified that he never met Castillo-Puche. Hotchner knew no Spanish; Castillo-Puche knew no English. Hotchner and another member of Hemingway's entourage in Spain, Annie Davis, testified that at many of the occasions described in the book Castillo-Puche had not been present. They said that Castillo-Puche could have been among the hordes of people who had brief contact with Hemingway in a bar in Pamplona during the bull-fighting

festival in 1959. Hemingway's widow and daughter-in-law, testifying on behalf of Doubleday, said that Castillo-Puche had been a friend of Hemingway's and had been present with Hemingway and his companions on a number of occasions. Also introduced at trial were the Spanish and English editions of Castillo-Puche's book; these contain a number of photographs of Castillo-Puche with Hemingway and, on at least one occasion, with Hotchner and Hemingway.

On the libel count, the jury returned answers to written interrogatories regarding nineteen alleged libels. It found that all the elements of liability had been proved against Doubleday in six instances. The jury also returned answers to written interrogatories on the invasion of privacy count, finding that Doubleday had knowingly portrayed Hotchner in a false light or as a participant in fictionalized events or conversations. The jury found Hotchner entitled to recover $1 on each count as compensatory damages and $125,000 as punitive damages. On July 30, 1976, Judge Brieant denied Doubleday's motion for judgment n. o. v. or remittitur.[4] On September 1, judgment was entered in favor of Hotchner for $125,002, with costs to be taxed. This appeal by Doubleday followed.

■ When a public figure sues for defamation, the first amendment bars recovery unless the defamatory falsehoods were made with knowledge of falsity or with reckless disregard for the truth. *Gertz v. Robert Welch, Inc.,* 418 U.S. 323, 342–43, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974); *Curtis Publishing Co. v. Butts,* 388 U.S. 130, 162–65, 87 S.Ct. 1975, 18 L.Ed.2d 1094 (1967) (opinion of Warren, C. J.); *New York*

---

**2.** In his memo to Medina recommending changes, Austin wrote:

> When looked at together these statements certainly ridicule Hotchner and impugn his reputation and character. As he seems to be an author who has worked in movies and TV, this could be a serious matter.
>
> To make matters worse I doubt whether any of these statements can be substantiated in any way.
>
> From reading the pages you sent, this treatment borders on "malice", which togeth-

er with "reckless disregard for the truth", is a prime element in any libel action.

**3.** The manuscript was later read by a Doubleday copy editor checking for intrinsic errors. He found no internal inconsistencies such as might call into question any of Castillo-Puche's allegations concerning Hotchner.

**4.** Judge Brieant granted Castillo-Puche's motion that the action against him be dismissed for want of personal jurisdiction.

*Times Co. v. Sullivan,* 376 U.S. 254, 279–80, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). The same standard applies if the public figure sues for invasion of privacy. *Cantrell v. Forest City Publishing Co.,* 419 U.S. 245, 249, 95 S.Ct. 465, 42 L.Ed.2d 419 (1974); *Time, Inc. v. Hill,* 385 U.S. 374, 388, 87 S.Ct. 534, 17 L.Ed.2d 456 (1967). The proof must be "clear and convincing"; a mere preponderance of the evidence is not enough. *Gertz v. Robert Welch, Inc.,* supra, 418 U.S. at 342, 94 S.Ct. 2997; see *New York Times Co. v. Sullivan,* supra, 376 U.S. at 285–86, 84 S.Ct. 710. "[R]eckless disregard of the truth [means] subjective awareness of probable falsity: 'There must be sufficient evidence to permit the conclusion that the defendant in fact entertained serious doubts as to the truth of his publication.'" *Gertz v. Robert Welch, Inc.,* supra, 418 U.S. at 335 n. 6, 94 S.Ct. at 3004, quoting *St. Amant v. Thompson,* 390 U.S. 727, 731, 88 S.Ct. 1323, 20 L.Ed.2d 262 (1968). Mere negligence is not actionable.

■ These strict tests may sometimes yield harsh results. Individuals who are defamed may be left without compensation. But excessive self-censorship by publishing houses would be a more dangerous evil. Protection and encouragement of writing and publishing, however controversial, is of prime importance to the enjoyment of first amendment freedoms. Any risk that full and vigorous exposition and expression of opinion on matters of public interest may be stifled must be given great weight. In areas of doubt and conflicting considerations, it is thought better to err on the side of free speech. Such adequate safeguards for free speech inevitably result in reduced protection against printed statements which otherwise would be held to be libellous. To ensure that proper weight has been given to the protection of first amendment rights, it is important that the court make "an independent examination of the whole record" in scrutinizing a jury finding of scienter in a libel case. *Buckley v. Littell,* 539 F.2d 882, 888 (2d Cir. 1976), cert. denied, —— U.S. ——, 97 S.Ct. 785, 50 L.Ed.2d 777 (1977).

■ An assertion that cannot be proved false cannot be held libellous. A writer cannot be sued for simply expressing his opinion of another person, however unreasonable the opinion or vituperous the expressing of it may be. See *Gertz v. Robert Welch, Inc.,* supra, 418 U.S. at 339–40, 94 S.Ct. 2997; *Buckley v. Littell,* supra at 893. Thus, Castillo-Puche's characterizations of Hotchner cannot, if viewed in isolation, constitute actionable libel.

■ Liability for libel may attach, however, when a negative characterization of a person is coupled with a clear but false implication that the author is privy to facts about the person that are unknown to the general reader. If an author represents that he has private, first-hand knowledge which substantiates the opinions he expresses, the expression of opinion becomes as damaging as an assertion of fact. In this case, the jury could reasonably have found that, contrary to the impression of intimacy conveyed by his book, Castillo-Puche's actual contact with and first-hand knowledge about Hotchner was virtually nil.

■ Opinions based on false facts are actionable only against a defendant who had knowledge of the falsity or probable falsity of the underlying facts. See *Kapiloff v. Dunn,* 27 Md.App. 514, 343 A.2d 251, 263 (1975), cert. denied, 426 U.S. 907, 96 S.Ct. 2228, 48 L.Ed.2d 832 (1976). Doubleday had no cause for serious doubts on this score. Several photographs of Castillo-Puche with Hemingway and at least one with Hotchner and Hemingway, the reputations of Castillo-Puche and of his Spanish publisher, and the book itself all seemed to indicate that Castillo-Puche's opinions of Hotchner were based on personal observations. Castillo-Puche's allegations were not of such an extraordinary nature as would suggest a high probability of falsity; he made no claims that Hotchner had engaged in any unusual or outlandish conduct. While Castillo-Puche's denunciations of Hotchner were sufficient to put Doubleday on notice of Castillo-Puche's animosity toward Hotchner, there was no reason to believe that Castillo-Puche had never really

914

observed Hotchner. Knowledge of an author's ill-will does not by itself prove knowledge of probable falsity. Cf. *Goldwater v. Ginzburg,* 414 F.2d 324, 342 (2d Cir. 1969). Thus, the evidence does not demonstrate that Doubleday had cause seriously to suspect that Castillo-Puche's opinions of Hotchner were without foundation. Doubleday's failure to conduct an elaborate independent investigation did not constitute reckless disregard for truth. Cf. *St. Amant v. Thompson,* supra, 390 U.S. at 733, 88 S.Ct. 1323; *New York Times Co. v. Sullivan,* supra, 376 U.S. at 287–88, 84 S.Ct. 710.

■ As for the sixth alleged libel, the statement about Hotchner purportedly made to Castillo-Puche by Hemingway, the record does not support a conclusion that Doubleday published with serious doubts about the authenticity of Castillo-Puche's version. As originally translated, Hemingway's words were: "[Hotchner is] dirty and a terrible ass-licker. There's something phony about him. I wouldn't sleep in the same room with him." There was no clear and convincing evidence that Doubleday knew or even suspected that this conversation was a fabrication. From Hotchner's own *Papa Hemingway,* Doubleday could have inferred that Hemingway had affection and respect for Hotchner, but no means were readily available for verifying or discrediting Castillo-Puche's account. The incident itself is believable and, as all the witnesses at trial agreed, the language used and sentiments expressed were not uncharacteristic of Hemingway. Double-

day's editor did confirm with Castillo-Puche that he stood by his account of the incident. Where a passage is incapable of independent verification, and where there are no convincing indicia of unreliability, publication of the passage cannot constitute reckless disregard for truth.

■ Appellee contends that Doubleday should be liable simply because it knowingly published a bowdlerized version of Hemingway's alleged statement. We disagree. It is true that in transforming Hemingway's words to the much milder "I don't trust him," Doubleday was fictionalizing to some extent. However, the change did not increase the defamatory impact or alter the substantive content of Hemingway's statement about Hotchner. If Doubleday could not have been liable for publishing the uncut version, it cannot be liable for deciding to make the passage less offensive to Hotchner.

Thus, there was no evidence from which the jury might reasonably have found that the defendant published the alleged libels with knowledge of falsity or reckless disregard for truth. The judgment is reversed; we remand to the district court for entry of judgment dismissing the amended complaint.