Philip HANDELMAN, Plaintiff,

v.

HUSTLER MAGAZINE, INC. and Larry
C. Flynt and Kevin Cash, Defendants.

No. 77 CIV 3666 (LBS).

United States District Court,
S. D. New York.

Oct. 12, 1978.

See also D.C., 469 F.Supp. 1053.

Philip Handelman, pro se.

Jack N. Alpert, New York City, for defendants.

---

OPINION

SAND, District Judge.

Jurisdiction in this libel action is based upon diversity of citizenship. Plaintiff alleges that he was libeled by a *Hustler* feature article about William Loeb, publisher of the *Manchester Union Leader* and the *New Hampshire Sunday News*, which, among other matters, described the extensive litigation which raged over the estate of William Loeb's mother. The defendants in this case are Hustler Magazine, Inc., Larry C. Flynt, its publisher, and Kevin Cash, who allegedly wrote the article under the fictitious name, "Ben Steffens".

In his complaint, plaintiff states that he is the attorney who represented the executor of the Loeb estate. He alleges that he was libeled by one sentence in the *Hustler* article which reads: "Loeb, according to the book,[1] fought the will for about six years, letting high-priced New York lawyers eat up over $800,000. before withdrawing his complaint, leaving his daughter to pay taxes on the rest"[2]. According to plaintiff, a lawyer who receives eighty per cent of an estate for a fee is "lacking in integrity and violating all existent standards with respect to ethical charges". Plaintiff's Memorandum in Opposition to Defendant's Motion for Summary Judgment, p. 5 (hereinafter "Plaintiff's Memo"). Thus, plaintiff argues that the article is libelous per se and actionable without proof of special damages. Defendants move for summary judgment on the grounds that (1) the statement is not actionable because it does not refer to plaintiff; (2) the published words are, as a matter of law, not libelous per se; and (3) even if they are libelous per se, the "single instance" rule makes the failure to allege special damages fatal. Plaintiff argues that there are disputed questions of fact which preclude summary judgment. For the reasons herein stated, summary judgment is denied.

Under New York law,[3] the plaintiff must show that a libelous statement was published "of and concerning him". *Julian v. American Business Consultants, Inc.*, 2 N.Y.2d 1, 155 N.Y.S.2d 1, 137 N.E.2d 16 (1956). As the Second Circuit has stated, the question is whether:

> "the libel designates the plaintiff in such a way as to let those who knew him understand that he was the person meant. It is not necessary that all the world should understand the libel; it is sufficient if those who knew the plaintiff can make out that he is the person meant." *Fetler v. Houghton Mifflin Co.*, 364 F.2d 650 (2d Cir. 1966).

Moreover, it is for the jury to decide whether a written defamatory statement applies to plaintiff. *Brayton v. Crowell-Collier Publishing Co.*, 205 F.2d 644 (2d Cir. 1953); *Foltz v. News Syndicate Co.*, 114 F.Supp. 599 (S.D.N.Y.1953); *Bridgewood v.*

---

1. The article quotes extensively from a book on Loeb entitled "Who the Hell is William Loeb" written by Cash and published shortly before the end of 1975. Cash is a defendant herein not because of the book but because, under a pseudonym, he allegedly wrote the article (which is very partial to him in its description of his disputes with Loeb). Defendants contend that Cash merely submitted an outline of the article which was then completed by other writers. Furthermore, defendants point out that, for various reasons, many *Hustler* writers use pseudonyms. In any event, Cash's role is not germane to this motion.

2. At oral argument of this motion and in his memorandum, plaintiff disclaimed any objection to the words "high priced New York lawyers". Indeed, he would take umbrage at any suggestion that he was not a "high priced New York lawyer".

3. Plaintiff was apparently domiciled in New York at the time of the publication of the *Hustler* article, and the article was published in New York. New York law, therefore, governs. See Restatement (Second) of Conflict of Laws, section 150(2) (1971).

*Newspaper PM, Inc.*, 276 App.Div. 858, 93 N.Y.S.2d 613 (Second Dep't 1949). At trial, a plaintiff is entitled to prove this fact by the use of extrinsic evidence.[4]

Defendants argue that this sentence does not refer to plaintiff. Under this interpretation:

> "[i]t is clear that . . . the object of the sentence is Mr. Loeb, not the attorneys for the estate. The clear import of the sentence is that Loeb's destructive purposes created such litigation and other legal proceedings as to cause a good deal of legal work in opposition to him. No conclusion adverse to the attorneys' involvement in these proceedings can fairly be drawn from that statement." Defendant's Memo, p. 12.

Plaintiff, on the other hand, argues that in referring to the lawyers involved with the estate, the sentence clearly depicts the attorney of record for the estate.

■ Clearly, the primary target of the article is Mr. Loeb. One may also read the sentence in question as being highly critical of the lawyers retained by Mr. Loeb to pursue allegedly frivolous claims, later abandoned, against the estate. The question is, however, whether a jury could find that the term "lawyers" refers not only to Mr. Loeb's attorneys but to Mr. Handelman as well. Under this interpretation, Mr. Handelman, as a member of the group, would still be entitled to recover. When a defamatory matter refers to a small group of persons, an individual member may recover if (1) the group or class is so small that the matter can reasonably be understood to refer to the member, or (2) the circumstances of publication reasonably give rise to the conclusion that there is a particular reference to the member. *Re-*

*statement* (Second) of Torts, section 564A, Comment b, Illustration 3 (1977); see *Neiman-Marcus v. Lait*, 13 F.R.D. 311 (S.D.N.Y.1952).

■ Although we realize that the burden on plaintiff to show that a statement is "of and concerning him" is not a light one,[5] we cannot conclude that these words are incapable of supporting a jury's finding that the allegedly libelous statements refer to plaintiff.

Besides contending that the sentence does not refer to plaintiff, defendants also argue that summary judgment is appropriate because the article is not libelous per se. An article is libelous per se—that is, actionable without allegation or proof of special damages—:

> " 'if it tends to expose a person to hatred, contempt or aversion, or to induce an evil or unsavory opinion of him in the minds of a substantial number of the community, even though it may impute no moral turpitude to him' . . . [or] tends to disparage a person in the way of his office, profession or trade." *Nichols v. Item Publishers, Inc.*, 309 N.Y. 596, 600–01, 132 N.E.2d 860, 861–862 (1956); quoting *Mencher v. Chesley*, 297 N.Y. 94, 100, 75 N.E.2d 257 (1947).

■ In determining whether this article is defamatory, this Court must decide whether the words are susceptible of the meaning ascribed to them. *Tracy v. Newsday, Inc.*, 5 N.Y.2d 134, 136, 182 N.Y.S.2d 1, 3, 155 N.E.2d 853 (1953).

The article must be read as a whole, and the words used given their natural import, and their plain and ordinary meaning. *November v. Time, Inc.*, 13 N.Y.2d 175, 178–79, 244 N.Y.S.2d 309, 194 N.E.2d 126 (1963).

---

**4.** Defendants argue that "[i]n the absence of the pleading of special damages, Plaintiff cannot recover against the Defendants based upon evidence that a few individuals . . . did allegedly recognize Plaintiff as an object of the *Hustler* article in question". Defendants Memorandum in Support of Motion for Summary Judgment, p. 18 [hereinafter Defendant's Memo]. However, the need for extrinsic evidence to prove application to the plaintiff—as distinguished from the use of such evidence to

show that injury resulted from apparently innocuous language—does not convert a defamatory statement which would otherwise be actionable without proof of special damages into one for which recovery can be had only upon proof of such damage. *Brayton v. Crowell-Collier Publishing Co*, 205 F.2d 644 (2d Cir. 1953).

**5.** See *Fetter v. Houghton Mifflin Co.*, 364 F.2d 650, 653 (2d Cir. 1966).

Finally, the publication must be tested by its effect upon the average reader. *James v. Gannett Co.*, 40 N.Y.2d 415, 419–20, 386 N.Y.S.2d 871, 353 N.E.2d 834 (1976).

Plaintiff claims that the statement with "respect to 'eating' up $800,000. is highly defamatory, conjuring up what the defendant, Kevin Cash, says is an image of a lawyer with a 'license to steal'". Defendants, on the other hand, maintain that this sentence, even if read to refer to plaintiff, does not cast any dispersions on plaintiff's legal ability.

We agree with defendants that this sentence can reasonably be interpreted in a non-defamatory sense. For example, the sentence can be read as implying that Mr. Loeb's attorneys engaged in frivolous litigation and Handelman merely performed the lawyerly task of defending successfully the attack on the estate. Such conduct does not cast Mr. Handelman in an unprofessional light. *See Kleeberg v. Sipser*, 265 N.Y. 87, 92, 191 N.E. 845, 846 (1934) ["when parties are unable to reconcile their differences, favoring a lawsuit to settle the controversy is not to an attorney's discredit."]

Yet, we find that this sentence could also be read as imputing to plaintiff conduct which is incompatible with the standards of an ethical lawyer and as such, it would violate one of the four traditional categories of libel per se. For example, the sentence could be read to imply that plaintiff charged an excessive or exorbitant fee or that he acted unethically in permitting an estate to be wasted away.

On facts which we recognized are substantially stronger for the plaintiff than those of the instant action, a handful of New York courts have recognized that a statement that an attorney has charged an excessive or exorbitant fee is defamatory. In 1871, the New York Court of Appeals in *Sanderson v. Caldwell*, 45 N.Y. 398 (1871), found that an article which charged an attorney with exacting excessive fees for professional services on behalf of soldiers' and sailors' claims against the government was libelous per se. Similarly, in *Levy v. Gelber*, 175 Misc. 746, 747, 25 N.Y.S.2d 148 (Bronx Co. 1941), the Court held:

". . . statements, *inter alia*, that an attorney has exacted undue and excessive fees; that he has split these fees with a layman and that he has been disloyal to the best interests of his client are libelous per se in that they tend to injure him in his profession by imputing to him unethical and discredible practice."

*See also Shenkman v. O'Malley*, 1 Misc.2d 794, 147 N.Y.S.2d 87 (Sup.Ct.N.Y.Co.1955) where the court stated that a physician had a cause of action for slander where an alleged slanderous statement charged that his fees were excessive. But see *Zeck v. Spiro*, 52 Misc.2d 629, 276 N.Y.S.2d 395 (Sup.Ct.N.Y.Co.1966).

■ New York courts also recognize that it is libelous per se to accuse an attorney of unprofessional conduct. Thus, in *Kleeberg v. Sipser*, 265 N.Y. 87, 191 N.E. 845 (1934), an attorney sued on the basis of five letters defendant wrote to plaintiff's client. Among other things, defendant indicated that plaintiff refused to negotiate and that this refusal cost the client money. In refusing to dismiss the complaint, the Court of Appeals stated:

"The language therein alleged could warrant an inference of fact that defendant intended to and did charge the attorney with fomenting litigation in that he preferred a 'fight' rather than a conference which might lead to an amicable settlement, with lack of good faith as an attorney, with making a threat, with breaking off negotiations instead of making efforts to bring about an understanding to save further lawyer's expenses, with acting unfairly in a quarrel between brothers, with drawing up a document with the object of forcing its rejection by the attorney representing his client's brother, and with refusal to comply with his client's wishes. This language is such that a jury could find that it amounts to an untrue charge of numerous infractions of elementary professional ethics and that it tended to bring gross discredit upon the attorney. These are questions of fact and there may be a

substantial defense. We decide nothing on this appeal except the adequacy of the plaintiff's pleading." 265 N.Y. at 93, 191 N.E. at 846.

More recently, in *November v. Time, Inc.,* 13 N.Y.2d 175, 244 N.Y.S.2d 309, 194 N.E.2d 126 (1963), the Court of Appeals reversed the Appellate Division which had held that an article in *Sports Illustrated* could not be fairly construed as imputing incompetency or unethical conduct to plaintiff, an attorney, in representing his client. That article described the "bizarre cast of characters" surrounding Floyd Patterson, including plaintiff and his client, Patterson's manager. Specifically, the article stated that plaintiff told his client to ignore a state subpoena. Although defendant argued that the statement was not defamatory because of the "single instance" rule, the Court of Appeals refused to ignore the subtle suggestions throughout the article that plaintiff's motives were selfish and sinister:

"[T]he picture presented by the magazine article was—or the jury might say it was—of a group of ambitious people each using his wits to grab for money and power—and one of them, plaintiff, doing it by methods inconsistent with his professional obligations. The gloss or interpretation which plaintiff would have the jury apply is derived not from external facts but is one which a reader might not irrationally attach to the article as written. The jury will be asked not to alter or expand the meaning of the actual words but to adopt a possible construction of them and it will be for the jurors to determine in which of two possible senses the words were used." 13 N.Y.2d at 179, 244 N.Y.S.2d at 312, 194 N.E.2d at 129 [citations omitted].

■ Admittedly, the Hustler article does not paint the same picture of intrigue or cast the lawyers in the same sinister role; however, we cannot now conclude that the words are incapable of a defamatory interpretation. It is for the jury to determine whether they were in fact understood in a defamatory sense.

Finally, defendants argue that even if the words could be read to defame plaintiff, the "single instance" rule bars recovery. This rule, first enunciated in *Foot v. Brown,* 8 Johns 64 (1811), holds that:

"language charging a professional man with ignorance or mistake on a single occasion only and not accusing him of general ignorance or lack of skill cannot be considered defamatory on its face and so is not actionable unless special damages are pleaded." *November v. Time, Inc.,* 13 N.Y.2d 175, 178, 244 N.Y.2d 309, 311, 194 N.E.2d 126, 128 (1963).

Plaintiff, on the other hand, argues that the single instance rule is inapplicable here because "[i]gnorance or mistakes are not involved". Plaintiff's Memo, p. 5.

■ We agree with plaintiff that the "single instance" rule does not bar recovery. As the First Department stated in *Mason v. Sullivan,* 26 A.D.2d 115, 117, 271 N.Y.S.2d 314, 316 (1966):

"The 'single instance' rule has application to charges which imply that plaintiff is unfit to carry on his profession or calling. In essence it is that a charge that plaintiff in a single instance was guilty of a mistake, impropriety or other unprofessional conduct does not imply that he is generally unfit (*Twiggar v. Ossining Print. & Pub. Co.,* 161 App.Div. 718, 146 N.Y.S. 529; *Amelkin v. Commercial Trading Co.,* 23 A.D.2d 830, 259 N.Y.S.2d 396). But the rule is quite otherwise where the deviation from professional conduct shows a lack of character or a total disregard of professional ethics (*November v. Time, Inc.,* 13 N.Y.2d 175, 244 N.Y.S.2d 309, 194 N.E.2d 126). Then the words would certainly injure him in his professional capacity and are libelous per se (*Kleeberg v. Sipser,* 265 N.Y. 87, 191 N.E. 845)."

In the instant action, if a jury found that the article referred to plaintiff and that it tended to show that he acted in total disregard of professional ethics, the "single instance" rule would not apply.

Accordingly, defendants' motion for summary judgment is denied. We express no

opinion at this time as to the merit of any defenses which may be available to defendants.

SO ORDERED.