**Gail DAVIS, Plaintiff-Appellant,**

v.

**Diana ROSS, Defendant-Appellee.**

**No. 563, Docket 84–7787.**

United States Court of Appeals, Second Circuit.

Argued Dec. 17, 1984.

Decided Jan. 28, 1985.

Donald S. Zakarin, New York City (Barbara L. Kagedan, Pryor, Cashman, Sherman & Flynn, New York City, of counsel), for plaintiff-appellant.

L. Peter Parcher, New York City (Helene M. Freeman, Parcher & Hayes, New York City, of counsel), for defendant-appellee.

Before TIMBERS, VAN GRAAFEILAND and PIERCE, Circuit Judges.

PIERCE, Circuit Judge:

Gail Davis appeals from a judgment entered on September 24, 1984, in the United States District Court for the Southern District of New York, Robert L. Carter, *Judge.* Davis, a former employee of appellee Diana Ross, alleges that the district court erred in dismissing her complaint after concluding, as a matter of law, that a letter circulated by Ross was not libelous. Because we find that the letter is reasonably susceptible of a reading which could be considered libelous, we reverse the decision of the district court and remand for further proceedings consistent with this opinion.

### BACKGROUND

From approximately January 4, 1982 until November 5, 1982, appellant Gail Davis was employed as an executive assistant by Diana Ross, a well-known recording artist and motion picture actress. Davis alleges in her complaint that, at all times, she performed her services in a professional and competent manner and that Ross was aware of and appreciated the quality of her work. In early November, 1982, for reasons not made known by either party, Davis voluntarily resigned.

It is undisputed that on October 11, 1983, almost one year after Davis' resignation, Ross wrote the following letter:

To Whom it May Concern:

The following [seven] people are no longer in my employment:

. . . .

   Gail Davis

If I let an employee go, it's because either their work or their personal habits are not acceptable to me. I do not recommend these people. In fact, if you hear from these people, and they use my

name as a reference, I wish to be contacted.

Ross admits writing and disseminating this letter. Appellee's Brief at 2 n.*. According to Davis, she never used or attempted to use Ross as a reference for new employment, nor has anyone, to appellant's knowledge, solicited information from Ross regarding appellant's professional competence or personal habits. Appellant's Brief at 6.

Davis sued Ross for libel, alleging that Ross' letter, read as a whole, falsely asserts: that Ross fired her, that she was fired because of inadequate work or personal habits, and that her inadequacies were of such magnitude to warrant Ross' specific recommendation that recipients of the letter should not hire her. Claiming damage to her professional reputation, appellant seeks recovery of $1 million in compensatory damages. In addition, based on her claim that in publishing the letter Ross acted with actual malice or with reckless disregard for the truth or falsity of the contents of the letter, appellant also seeks $1 million in punitive damages.

Both Ross and the district court admit that it would be reasonable to read the letter in question as falsely asserting that appellant had been fired. However, the district court found that the letter could not reasonably and fairly be read by anyone as asserting that appellant "was incompetent to perform as an executive assistant or that her personal habits are such that she cannot function in a manner suited to an executive assistant," and the district court determined that the letter expresses only Ross' personal dissatisfaction with appellant, rather than a general lack of capacity or unfitness. Thus, the court concluded that, as a matter of law, the text of the letter was not libelous. Accordingly, the district court granted Ross' motion to dismiss appellant's complaint pursuant to Fed. R.Civ.P. 12(b)(6).

On appeal, Davis alleges that the letter unequivocally falsely disparages her professionally and thus constitutes libel *per se* as a matter of law. Alternatively, even if the letter is not sufficiently damaging to be considered libelous *per se* as a matter of law, appellant argues that because the letter is at least reasonably susceptible of such an interpretation, the issue should have been resolved by the trier of fact, not by the court solely as a matter of law.

### DISCUSSION

New York recognizes a limited category of statements to be libelous *per se* which do not require pleading and proof of special damages. Among these statements, it is well settled that "a writing which *tends* to disparage a person in the way of his office profession or trade" is libelous *per se*. *Nichols v. Item Publishers*, 309 N.Y. 596, 600, 132 N.E.2d 860, 862 (1956) (emphasis added); *J.P. McCullough v. Certain Teed Products Corporation*, 70 A.D.2d 771, 771, 417 N.Y.S.2d 353, 355 (4th Dept.1979); *Four Star Stage Lighting, Inc. v. Merrick*, 56 A.D.2d 767, 768, 392 N.Y.S.2d 297, 298 (1st Dept.1977) ("words are libelous if they affect a person in his profession, trade, or business by imputing to him any kind of fraud, dishonesty, misconduct, incapacity, unfitness or want of any necessary qualification in the exercise thereof").

To decide if Ross' letter disparages Davis professionally so as to constitute libel, the first determination to be made is whether the words in question are susceptible of only one meaning or of several meanings. Such a determination is to be made by the court. *Julian v. American Business Consultants*, 2 N.Y.2d 1, 17, 137 N.E.2d 1, 17, 155 N.Y.S.2d 1, 17 (1956). If the court determines that the words are susceptible of only one meaning, it then must determine, as a matter of law, whether that one meaning is defamatory. In making this determination, the court is to employ an objective standard and consider whether an ordinary person would find the statement "reasonably susceptible of a defamatory connotation." *James v. Gannett Co.*, 40 N.Y.2d 415 at 419, 353 N.E.2d 834 at 837, 386 N.Y.S.2d 871 at 874 (1976).

If, however, the court determines that the words are susceptible of more than one meaning, it is then for the trier of fact, not for the court acting on the issue solely as a matter of law, to determine in what sense the words were used and understood. *James*, 40 N.Y.2d at 419, 353 N.E.2d at 837, 386 N.Y.S.2d at 874; *November v. Time, Inc.*, 13 N.Y.2d 175, 179, 194 N.E.2d 126, 128, 244 N.Y.S.2d 309, 312 (1963). In making this determination with regard to a statement which appears to have more than one meaning, the fact-finder must also employ an objective standard and consider whether the statement would most likely be interpreted as defamatory or nondefamatory by the "ordinary and average reader." *James*, 40 N.Y.2d at 419, 353 N.E.2d at 837–38, 386 N.Y.S.2d at 874 (quoting *Mencher v. Chesley*, 297 N.Y. 94, 100, 75 N.E.2d 257, 259 (1947)).

■ Moreover, for the initial determination by the court as to whether a statement is reasonably susceptible of only one meaning, and, if so, whether that meaning is defamatory, the New York Court of Appeals has articulated certain standards. First, the court must "consider the publication as a whole," and "not pick out and isolate particular phrases." *James*, 40 N.Y.2d at 419, 353 N.E.2d at 838, 386 N.Y.S.2d at 874. The meaning of a writing "depends not on isolated or detached statements but on the whole apparent scope and intent." *November*, 13 N.Y.2d at 179, 194 N.E.2d at 128, 244 N.Y.S.2d at 311. Second, the publication should "be tested by its effects upon the average reader." *James*, 40 N.Y.2d at 419, 353 N.E.2d at 838, 386 N.Y.S.2d at 874. "The words are to be construed not with the close precision expected from lawyers and judges but as they would be read and understood by the public to which they are addressed." *November*, 13 N.Y.2d at 178–79, 194 N.E.2d at 128, 244 N.Y.S.2d at 312. Third, the court should "not strain to place a particular interpretation on the published words," *James*, 40 N.Y.2d at 120, 353 N.E.2d at 838, 386 N.Y.S.2d at 874, nor "interpret such writings 'in their mildest and most inoffensive sense to hold them nonlibe-

lous.'" *November*, 13 N.Y.2d at 178, 194 N.E.2d at 128, 244 N.Y.S.2d at 311 (quoting *Mencher v. Chesley*, 297 N.Y. at 99, 75 N.E.2d at 259). Finally, the statement in question should "be 'read against the background of its issuance' with respect to 'the circumstances of its publication.'" *James*, 40 N.Y.2d at 420, 353 N.E.2d at 838, 386 N.Y.S.2d at 874. "The construction which it behooves a court of justice to put on a publication is to be derived as well from the expressions used as from the whole scope and apparent object of the writer." *Id.*, 40 N.Y.2d at 353 N.E.2d at 838, 386 N.Y.S.2d at 875 (quoting *Cooper v. Greeley*, 1 Denio 347, 358 (N.Y.Sup.Ct.1845)).

■ After applying the New York Court of Appeals' four standards to the case herein, we conclude that the district court improperly found that Ross' letter could not reasonably be susceptible of several interpretations, one of which is defamatory.

First, the district court stated:

Plaintiff's allegation that the letter is libelous depends upon the conclusion that the words '[her] work or personal habits are not acceptable to me' can reasonably be read as meaning that plaintiff is incompetent to perform as an executive assistant or that her personal habits are such that she cannot function in a manner suited to an executive assistant.

In seemingly limiting Davis' claim of libel to this portion of the subject letter, the district court held that the letter merely expresses Ross' subjective dissatisfaction with Davis' habits and does not pretend to convey an objective evaluation of her professional qualifications. In support of this view of the letter as non-defamatory, Ross suggests several possible interpretations, *e.g.*, that she could simply have been dissatisfied with the way Davis wore her hair or with other features of Davis, totally unrelated to her professional competence. Both the district court and Ross, however, ignore the following sentence in the letter which states: "I do not recommend these people." Were Ross' suggested interpreta-

tions correct, there would have been no reason for Ross to have added the statement that she does not recommend Davis, thereby implying that Davis' habits might preclude her from being acceptable to some other employer. Thus, as Davis maintains, it is only by erroneously focusing on certain isolated statements and phrases in the letter, rather than construing it as a whole, as required by New York case law, that the district court was able to conclude that the letter is susceptible of only a non-defamatory interpretation.

Second, a close reading of the letter would not necessarily lead to the conclusion that Davis was fired, in view of the ambiguity of the phrase "if I let an employee go," however, the district court and appellee Ross acknowledge that it would be reasonable to read the letter as falsely asserting that Ross fired Davis. To this extent, the district court followed the *James* and *November* courts' standards and correctly construed the letter in light of how the average reader would interpret it. Nevertheless, the district court went on to state that since the mere statement of discharge was not libelous, even if false, *Nichols v. Item Publishers*, 309 N.Y. 596, 132 N.E.2d 860 (1956), in its view, Ross' letter did not constitute libel in that Ross wrote "no more than that [Davis'] work or personal habits were unacceptable to [Ross] personally."

■ While it is true that the mere statement of discharge from employment does not constitute libel, the *Nichols* court added that publication of a discharge would be defamatory if "the publication contains an insinuation that the discharge was for some misconduct." 309 N.Y. at 601, 132 N.E.2d at 862. Adopting the third standard listed above, the New York Court of Appeals admonition not "to interpret such writings 'in their mildest and most inoffensive sense [in order] to hold them non-libelous,'" *November*, 13 N.Y.2d at 178, 194 N.E.2d at 128, 244 N.Y.S.2d at 311, we believe that the average reader would interpret the letter herein, read as a whole, as insinuating that Davis was discharged for lack of professional compe-

tence and not solely because she was personally unsatisfactory to Ross.

Fourth, we find that if the letter herein is read in context, its potentially libelous meaning becomes apparent. For example, if Ross' objections to Davis' work or personal habits were merely personal and were unrelated to her professional abilities, there would have been no reason for Ross to have "not recommend[ed her]" to others. Most significantly, if Ross' statements were intended to be as benign as she contends, it is difficult to understand why she would have circulated the letter to anyone, apparently on an unsolicited basis. No reason is suggested as to why Ross should have concluded that the recipients of the letter would be interested in whether Davis' habits were or were not personally satisfactory to Ross, although such speculation is warranted in light of the *James* court's holding that the words in question should be considered "against the background of its issuance with respect to the circumstances of its publication." *James*, 40 N.Y.2d at 420, 353 N.E.2d at 838, 386 N.Y.S. at 874.

Based upon the standards articulated by the New York courts, we therefore hold that the letter herein is reasonably susceptible of several interpretations, at least one of which is potentially libelous.

Furthermore, the cases cited by Ross do not support her contention that the letter herein could not reasonably be construed as libelous. For example, in *Kober v. Lyle*, 173 A.D. 655, 160 N.Y.S. 99 (1st Dept.1916), the court found, as a matter of law, that it was not libelous to charge a scientist with bad manners and with being a troublemaker. Given the absence of any reference to work habits, however, as were mentioned by Ross herein, the average reader would not reasonably conclude that the charges in *Kober* are a reflection of the employee's professional competence. In *Ertheiler v. Bernheim*, 37 A.D. 472, 56 N.Y.S. 26 (1st Dept.1899), cited by appellee and by the district court, the defendant sent a letter to one of his customers stating that defendant would, under no circumstances, have any

business dealings with plaintiff. The court found, as a matter of law, that the letter was not libelous. In *Ertheiler*, however, unlike the case herein, there was no explicit statement that the plaintiff's traits were "not acceptable" or that the plaintiff was "not recommend[ed]" by the defendant; the plaintiff never alleged that the defendant's statement was false; and the plaintiff resorted to innuendo to support his charge of libel.

In addition, in *Ratzel v. New York News Pub. Co.*, 67 A.D. 598, 73 N.Y.S. 849 (1st Dept.1902), relied on by Ross, the court held that a letter circulated throughout the advertising community stating that defendant's advertising manager had been terminated for "carelessness" and that he had been replaced by "competent parties, who [would] attend to [their] affairs in a more businesslike manner," 69 A.D. at 599, 73 N.Y.S. at 850, did not imply that plaintiff was incompetent. Since the plaintiff in *Ratzel*, however, unlike appellant herein, was merely charged with carelessness, he was forced to rely upon innuendo to establish his claim. Furthermore, *Ratzel* seems inconsistent with the more recent holding in *J.P. McCullough v. Certain Teed Products Corp.*, 70 A.D.2d 771, 417 N.Y.S.2d 353 (4th Dept. 1979), also decided by a court of intermediate appellate jurisdiction. In *Certain Teed*, the plaintiff had actually been fired from his employment, allegedly because he refused to participate in unlawful conduct. The statement in question was: "After what he did, it is no wonder that Mr. Prechek will not give you a reference." Finding that the listener could reasonably infer from the spoken words that "plaintiff was incompetent or incapable or did some act of a bad or unlawful character," the court held that whether the statement was a slander *per se* was a jury question." *Id.*, 70 A.D.2d at 771, 417 N.Y. S.2d at 355. In the instant case, Ross' letter similarly refused to recommend the plaintiff. Moreover, the letter herein explicitly states that Davis' work or personal habits were unacceptable, whereas this would have to be inferred from the communication in *Certain Teed*. Also, contrary to the statement herein, the defamatory communication in *Certain Teed* was spoken on the phone by an employee of the defendant to an employment agency. Since slander is generally considered less actionable than libel, because a written publication of a defamatory statement is more lasting and has the likelihood of a wider audience than an oral communication, based upon the holding in *Certain Teed*, the Ross letter could clearly be held to be potentially libelous. *See Klein v. McGauley*, 29 A.D.2d 418, 288 N.Y.S.2d 751, 754 (2d Dept.1968). Finally, as noted by appellant, courts in other jurisdictions have held statements which were even less disparaging than that made by Ross to be libelous. *See, e.g., Adler v. American Standard Corp.*, 538 F.Supp. 572 (D.Md.1982); *Patton v. Royal Industries, Inc.*, 70 Cal.Rptr. 44, 263 Cal. App.2d 760 (Ct.App.1968); *Walsh v. Consolidated Freightways, Inc.*, 278 Or. 347, 563 P.2d 1205 (Sup.Ct.1977); *Bock v. Zittenfield*, 66 Or.App. 97, 672 P.2d 1237 (Ct. App.1983).

In addition to holding that the letter is not libelous because it fails to disparage appellant in her professional capacity, the district court also found that the letter is not libelous because it is a mere expression of personal opinion, devoid of factual content.

This Court has held that "[a] writer cannot be sued for simply expressing his opinion of another person, however unreasonable the opinion or vituperous the expression of it may be." *Hotchner v. Castillo-Puche*, 551 F.2d 910, 913 (2d Cir.), *cert. denied*, 434 U.S. 834, 98 S.Ct. 120, 54 L.Ed.2d 95 (1977). Moreover, whether a statement constitutes a personal opinion or a statement of fact is a question of law for determination by the court. *Rinaldi v. Holt Rinehart & Winston*, 42 N.Y.2d 369, 382, 366 N.E.2d 1299, 1306, 397 N.Y.S.2d 943, 950, *cert. denied*, 434 U.S. 969, 98 S.Ct. 514, 54 L.Ed.2d 456 (1977). Nevertheless, this Court has held that "liability for libel may attach ... when a negative characterization of a person is coupled with a clear but false implication that the author

is privy to facts about the person that are unknown to the general reader." *Hotchner*, 551 F.2d at 913. The *Hotchner* court further stated that "[o]pinions based on false facts are actionable ... against a defendant who had knowledge of the falsity or probable falsity of the underlying facts." *Id.*

 We do not believe that at this juncture Ross' statements should be construed as a mere expression of her opinion. If the letter were mere opinion, as we have noted, Ross would have had no reason to send her opinion to persons who, as far as can be determined now, never solicited any information regarding Davis. Furthermore, as Davis notes, even if the first part of the letter merely expresses Ross' opinion, the subsequent statement, "I do not recommend these people," tends to objectify the evaluation and implies that others would also find Davis' work or personal habits unacceptable. Even if Ross' statements are considered to be opinion, however, they are still actionable under *Hotchner*. Herein, Ross' letter, read in its entirety, seems to imply that she had knowledge of facts supporting her claim of Davis' unacceptable work and personal habits. Since the district court's dismissal was pursuant to Rule 12(b)(6) of the Fed.R.Civ.P., Davis' factual allegations should be assumed to be true, *Conley v. Gibson*, 355 U.S. 41, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957), including her claim that at all times she performed her work in a professional and competent manner. Also, at the time she wrote the letter, Ross knew that Davis had not been fired but had voluntarily resigned. Thus, since Ross' statements may be found to be based on "false facts" within her knowledge, they would be actionable even if they were merely an expression of her opinion.

Based on the above, we find that Ross' letter is reasonably susceptible of several interpretations, at least one of which is potentially libelous. Consequently, it is for the trier of fact to determine in what sense the words were actually used. We therefore reverse the opinion of the district court and remand for further proceedings consistent with this opinion.