**Vincent A. CIANCI, Jr., Plaintiff,**

v.

**NEW TIMES PUBLISHING COMPANY, New Times Communications Corp., MCA, Inc., George A. Hirsch, Jonathan Z. Larsen and Craig Waters, Defendants.**

**No. 79 Civ. 0828.**

United States District Court, S. D. New York.

Dec. 13, 1979.

---

Kronish, Lieb, Shainswit, Weiner & Hellman by Seymour Shainswit, Edward M. Spiro, New York City, for plaintiff.

Satterlee & Stephens by Robert M. Callagy, James F. Rittinger, John T. Schmidt, Nancy K. Cassidy, New York City, for defendants.

## MEMORANDUM OPINION

MOTLEY, District Judge.

Defendants have moved, pursuant to Rule 12(b) and Rule 56 of the Federal Rules of Civil Procedure, for an order dismissing the complaint in this action.

This libel action concerns the publication of an article about plaintiff Vincent "Buddy" Cianci in the July 24, 1978, issue of *New Times* magazine entitled, "Buddy We Hardly Knew Ya." Cianci was at the time of publication, and is presently, mayor of Providence, Rhode Island.

On the cover of the July 24, 1978, issue of *New Times* is a picture of Cianci, and the caption "Was this man accused of raping a woman at gunpoint 12 years ago?" The description of the article in the contents page reads as follows:

> Twelve years ago, Vincent A. Cianci, Jr., a Marquette University law student, was accused of raping a woman at gunpoint. The woman reportedly received a $3,000 settlement, charges were dropped, and indictment faded away. In 1974, running on an anticorruption platform, Cianci was elected mayor of Providence, Rhode Island—the first Republican to hold the post in 35 years. Supporters have urged him to run for higher office, but Cianci's private past seems likely to influence his public future.

On the first page of the article is a similar description of the article. Excerpts highlighted on subsequent pages of the article include: "If Cianci stays in Providence, he's probably safe. If he goes on to the state or federal level, then obviously it's going to come out." "Redick took the lie detector test and passed; Cianci took it three times

and failed each time." "When the editors returned from their meeting with Cianci, they shunted the story to a high-security section of the computer." "Redick has confirmed her account and says that she did receive a $3,000 payoff."

In fact, the article nowhere states that Cianci was indicted, officially charged, or guilty of the crime of rape as claimed by the "victim," a woman identified by the pseudonym of Gayle Redick. The article begins by discussing Cianci's performance as mayor of Providence. It then notes that Cianci had once been accused of raping a woman at gunpoint. The article discusses the specific charge by Redick, as well as Cianci's denial of the charge. The article then quotes Redick's account of the events of the night in question (including her contradictory accounts of how she first met Cianci), as well as the police reports prepared in connection with the investigation of the charges. The article discusses a $3,000 payment made to Redick by Cianci and inquires if this payment was made to obtain an agreement by her to drop all charges. The article also recounts how the story of the alleged rape became known to journalists, how the journalists conducted an investigation of the incident (including alleged improprieties by those journalists), and the effort of Cianci and his representatives to keep the story of the alleged rape from being published.

The article concludes with the following paragraph:

> Still, the questions hang in the air. Rape at gunpoint is too serious a charge to ignore, even if the victim who leveled it has long since tried to forget. Cianci himself, who is clearly aware of the story that has been circulating around Providence, has tried privately to stop it, but not publicly to explain it. And so, we'd like to ask once and for all, and on the record: Mayor Cianci, what *did* transpire that morning of March 2, 1966? It is a question that should be answered, and certainly before the night of November 7, 1978.

Cianci has conceded the basic accuracy of many of the facts in the article—either during the course of his deposition or in response to defendants' Notice to Admit. The parties have stipulated that Cianci's response to the Notice to Admit would be sealed; however, the parties were not prevented from making any appropriate use of or reference to any portion of the response in connection with the present motion and other proceedings before the court. In any event, for the purposes of deciding the present motion it is not necessary for the court to discuss in detail the admitted facts. It should suffice to note that Cianci vigorously disputes the accuracy of at least two of the "facts" in the article: that he failed his lie detector test three times and that Redick's account of the alleged rape as reported in the article is true.

*Legal Principles*

The starting point in analyzing any defamation action brought by a public official or public figure must be the fundamental First Amendment principles set forth by the Supreme Court in its seminal decision, *New York Times Co. v. Sullivan*, 376 U.S. 254, 84 S.Ct. 710, 11 L.Ed.2d 686 (1964). *See generally Hutchinson v. Proxmire*, 443 U.S. 111, 133, 99 S.Ct. 2675, 2687, 61 L.Ed.2d 411, 430 (1979); *Wolston v. Reader's Digest Assoc.*, 443 U.S. 157, 162–165, 99 S.Ct. 2701, 2705–2706, 61 L.Ed. 450, 457–58 (1979); *Herbert v. Lando*, 441 U.S. 153, 155–57, 99 S.Ct. 1635, 1638–39, 60 L.Ed.2d 115, 121–22 (1979). In *New York Times v. Sullivan*, the Court reaffirmed the "profound national commitment to the principle that debate on public issues should be uninhibited, robust, and wide-open, and that it may well include vehement, caustic, and sometimes unpleasantly sharp attacks on government and public officials." 376 U.S. at 270, 84 S.Ct. at 721. The Court explained that freedoms of expression must have breathing space in order to survive. *Id.* at 271–72, 84 S.Ct. at 721. As has been subsequently noted, "[t]he very possibility of having to engage in litigation, an expensive and protracted process, is threat enough to cause discussion and debate to 'steer far wider of the unlawful zone' thereby keeping protected discus-

sion from public cognizance." *Rosenbloom v. Metromedia, Inc.*, 403 U.S. 29, 52–53, 91 S.Ct. 1811, 1824, 29 L.Ed.2d 296 (1971) (plurality). Accordingly, the Court in *New York Times v. Sullivan* held that the constitution prohibits a public official from recovering damages for a defamatory falsehood relating to his official conduct unless he proves that the statement was made with actual malice. 376 U.S. at 279–80, 84 S.Ct. at 726.

In the case at hand, it is beyond dispute that plaintiff Cianci is a public official within the meaning of *New York Times v. Sullivan* and its progeny. As a public official, anything which might touch on his fitness for office is relevant and protected in public discussion. *Garrison v. Louisiana*, 379 U.S. 64, 77, 85 S.Ct. 209, 217, 13 L.Ed.2d 125 (1964). It is well-established "as a matter of constitutional law that a charge of criminal conduct, no matter how remote in time or place, can never be irrelevant to an official's or a candidate's fitness for office." *Monitor Patriot Co. v. Roy*, 401 U.S. 265, 277, 91 S.Ct. 621, 628, 28 L.Ed.2d 35 (1971).

Public discussion regarding public officials such as Cianci merits careful protection under the First Amendment for several reasons. First, public officials such as Cianci "enjoy significantly greater access to the channels of effective communication and hence have a more realistic opportunity to counteract false statements than private individuals normally enjoy." *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 344, 94 S.Ct. 2997, 3009, 41 L.Ed.2d 789 (1974) [footnote omitted]. Second, public officials such as Cianci have voluntarily become involved in public controversy. "An individual who decides to seek governmental office must accept certain necessary consequences of that involvement in public affairs. He runs the risk of closer public scrutiny than might otherwise be the case." *Id.*

Plaintiff's contention that recent Supreme Court cases have somehow overruled these basic principles of First Amendment law is an unfortunate misperception. For example, the Court's decision in *Herbert v. Lando, supra*, while acknowledging the individual's interest in his reputation as a basic concern, explicitly recognized the basic principles set forth in *New York Times v. Sullivan* and subsequent cases. 441 U.S. at 155–57, 99 S.Ct. at 1638–39, 60 L.Ed.2d at 121–22. Plaintiff may agree or disagree with the merits of the specific issues discussed in *Herbert v. Lando*, but for the purposes of the present motion the court need only note the obvious—that *Herbert v. Lando* should not be read as unraveling the entire tapestry of First Amendment safeguards woven by the Supreme Court over the last fifteen years.

Similarly, plaintiff attempts to avoid the issues at hand by seizing upon the Supreme Court's dictum in a footnote in *Hutchinson v. Proxmire, supra*, 443 U.S. at 120 n. 9, 99 S.Ct. at 2680 n. 9, 61 L.Ed.2d at 422 n. 9: "The proof of 'actual malice' calls a defendant's state of mind into question, . . . and does not readily lend itself to summary disposition. . . . In the present posture of the case, however, the propriety of dealing with such complex issues by summary judgment is not before us." This dictum is simply of no relevance to the present motion, which raises no issue of actual malice or state of mind. Instead, the general principle followed in this court is fully applicable:

> Summary judgment is particularly appropriate at an early stage in cases where claims of libel or invasion of privacy are made against publications dealing with matters of public interest and concern. In recognition of the constitutional privilege of free expression secured by the First and Fourteenth Amendments, the courts in libel actions have recognized the need for affording summary relief to defendants in order to avoid the 'chilling effect' on freedom of speech and press.

*Meeropol v. Nizer*, 381 F.Supp. 29, 32 (S.D. N.Y.1974), *aff'd*, 560 F.2d 1061 (2d Cir. 1977), *cert. denied*, 434 U.S. 1013, 98 S.Ct. 727, 54 L.Ed.2d 756 (1978).

### Protected Opinion

As an initial matter, the court must decide whether the article in question is rea-

sonably susceptible of a defamatory connotation. *James v. Gannett Co.*, 40 N.Y.2d 415, 419, 386 N.Y.S.2d 871, 874, 353 N.E.2d 834, 837 (1976). The legal standards to be applied by the court in making this determination are well-settled:

> In analyzing the words in order to ascertain whether a question of fact exists for resolution upon trial, the court will not pick out and isolate particular phrases but will consider the publication as a whole. . . . The publication will be tested by its effect upon the average reader. . . . The language will be given a fair reading and the court will not strain to place a particular interpretation on the published words. . . .
> The statement complained of will be "read against the background of its issuance" with respect to the "circumstances of its publication". . . . "It is the duty of the court, in an action for libel, to understand the publication in the same manner that others would naturally do. 'The construction which it behooves a court of justice to put on a publication which is alleged to be libelous is to be derived as well from the expressions used as from the whole scope and apparent object of the writer'."

*Id.* at 419–20, 386 N.Y.S.2d at 874–75, 353 N.E.2d at 838.

In the case at hand, it would appear that the article in question contains no explicitly defamatory statements. The article carefully refrains from stating that Cianci was indicted, officially charged, or guilty of the crime of rape as claimed by Redick. Nor does the article ever state that Cianci paid Redick $3,000 as part of an agreement to drop criminal charges.

Nevertheless, Cianci argues that the article, despite its failure to explicitly state that Cianci was guilty of rape, somehow implies that Cianci was guilty of rape. This court finds it difficult to accept this assertion. While some readers may choose to infer that a party is guilty whenever an article reports a citizen's charge of criminal activity, the *New Times* article carefully reported the fact that Cianci had once been charged with rape by Redick, without drawing a conclusion as to his guilt or innocence.

The alleged defamatory implications in the article are slender indeed. Several of the passages claimed by plaintiff to illustrate the defamatory nature of the article are ambiguous, at most:

> Redick says she received a settlement of $3,000 from Cianci, half of which went to her attorney. Sometime between March 2, 1966, when Redick first alleged that she had been raped, and June 29, 1966, when River Hills police were advised that "the matter concerning one Vincent Cianci, Jr., has been resolved," Redick withdrew her complaint and a decision was made that Cianci would not be charged.
>
> .    .    .    .    .
>
> If, as it was once claimed, the entire matter was a shakedown, it was definitely of the nickel and dime variety: For the nominal sum of $3,000, Cianci had managed to buy his way out of a possible felony charge.
>
> .    .    .    .    .
>
> *Journal* staffers were shocked by the details: Here was a major story in the form of a police file—the victim's statement, the lab reports, Block's comment on the alleged crime. The copy of the file, even if it were incomplete, seemed to represent a significant indictment of the mayor. The *Journal*, a prestigious paper with a reputation for aggressive reporting, decided to investigate.

What is decisive in the disposition of the present motion, however, is not the mere absence of a defamatory connotation in the article. The court need not rule that the article is so void of defamatory connotations that the matter should be dismissed without jury trial. Instead, the court bases its dismissal of this action on its conclusion that, to whatever extent the article implies that Cianci was guilty of rape or improper payoffs, such implications are constitutionally protected as expressions of opinion.

It is a well-established principle that expressions of opinion are fully protected under the First Amendment. The Supreme

Court has explained that "[h]owever pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." *Gertz v. Welch, supra*, 418 U.S. at 339–40, 94 S.Ct. at 3007. To the same effect, the Second Circuit has held that "[a] writer cannot be sued for simply expressing his opinion of another person, however unreasonable the opinion or vituperous the expressing of it may be." *Hotchner v. Castillo-Puche*, 551 F.2d 910, 913 (2d Cir.), *cert. denied*, 434 U.S. 834, 98 S.Ct. 120, 54 L.Ed.2d 95 (1977).

█ Whether the allegedly defamatory material is held to constitute a statement of fact or opinion is a question of law for the court. *Church of Scientology of California v. Siegelman*, 475 F.Supp. 950, 955 (S.D.N.Y.1979). In the case at hand, nowhere in the *New Times* article does it state as a matter of fact that Cianci was indicted, officially charged, or guilty of rape. The article simply reports the alleged rape claim of Redick and subsequent events. The article simply does not state or imply as a matter of fact that Cianci was guilty of rape or made an improper payoff in order to obtain an agreement from Redick to drop criminal charges. At most, the article implies that its author is of the opinion that Cianci was guilty of rape. Defendants were constitutionally protected in their expression or implication of that opinion.

Given, then, that the article at most implies the opinion that Cianci was guilty of rape or of making an improper payoff, the article falls squarely within the constitutional protection for expressions of opinion. The doctrine of protected opinion has been carefully developed by the Second Circuit. Thus, the Second Circuit has explained that an action for libel may be maintained where an author falsely represents that he has private, first-hand knowledge which substantiates the opinions he expresses. *Hotchner v. Castillo-Puche, supra*, 551 F.2d at 913. As a corollary, the communication of an author's opinions cannot be libelous, however mistaken they might be, where the author sets forth the basis for his opinion.

*Edwards v. National Audubon Society, Inc.*, 556 F.2d 113, 121 (2d Cir.), *cert. denied*, 434 U.S. 1002, 98 S.Ct. 647, 54 L.Ed.2d 498 (1977). *See also Buckley v. Littell*, 539 F.2d 882 (2d Cir. 1976), *cert. denied*, 429 U.S. 1062, 97 S.Ct. 785, 50 L.Ed.2d 777 (1977).

In the case at hand, the author of the *New Times* article nowhere represents that he has private, first-hand knowledge regarding the alleged rape incident. To the contrary, the article carefully discloses the underlying facts regarding the charges made by Redick against Cianci.

Plaintiff attempts to avoid the clear line of Second Circuit cases protecting expressions of opinion by citing the New York Court of Appeals decision in *Rinaldi v. Holt, Rinehart & Winston, Inc.*, 42 N.Y.2d 369, 397 N.Y.S.2d 943, 366 N.E.2d 1299, *cert. denied*, 434 U.S. 969, 98 S.Ct. 514, 54 L.Ed.2d 456 (1977). In *Rinaldi*, the New York court held that "[a]ccusations of criminal activity, even in the form of opinion, are not constitutionally protected. . . . While inquiry into motivation is within the scope of absolute privilege, outright charges of illegal conduct, if false, are protected solely by the actual malice test." *Id.* at 382, 397 N.Y.S.2d at 951, 366 N.E.2d at 1307. Despite plaintiff's characterization, *Rinaldi* does not move expressions of opinion relating to criminal activity outside the scope of constitutional protection. *Rinaldi* simply declines to protect "outright charges of illegal conduct"; thus, *Rinaldi* is clearly inapplicable to the case at hand where the *New Times* article makes no such outright charges.

In fact, the Sixth Circuit has recently reached a position directly contrary to that advocated by plaintiff. In *Orr v. Argus-Press Co.*, 586 F.2d 1108 (6th Cir. 1978), *cert. denied*, 440 U.S. 960, 99 S.Ct. 1502, 59 L.Ed.2d 773 (1979), the plaintiff complained that an admittedly accurate new article about his indictment and arrest on charges of securities fraud was libelous. The plaintiff conceded that the basic factual statements contained in the story were true, but he objected to the characterization of his dealings as an "alleged swindle" and as "a

phony shopping mall investment scheme." The Sixth Circuit held that the statements in the article were constitutionally protected as opinion. The Sixth Circuit reviewed the constitutional principles, as summarized by the American Law Institute:

A simple expression of opinion based on disclosed or assumed non-defamatory fact is not itself sufficient for an action of defamation, no matter how unjustified and unreasonable the opinion may be or how derogatory it is. But an expression of opinion that is not based on disclosed or assumed facts and therefore implies that there are undisclosed facts on which the opinion is based, is treated differently. The difference lies in the effect upon the recipient of the communication.

*Id.* at 1115 (quoting Restatement (Second) of Torts § 566 (1977)). In *Orr*, as the reporter accurately reported the underlying facts concerning the indictment and arrest, the newspaper's opinion regarding the charges was protected under the First Amendment.

The *Orr* holding is directly applicable to the case at hand. The article in question clearly discloses the facts regarding the charge of rape made against Cianci. Nowhere does the article imply the existence of undisclosed facts on which any opinion of the validity of the charge is based. Accordingly, any expressions or implications of opinion in the article that Cianci was guilty of rape or of making a payoff to avoid prosecution are fully protected under the First Amendment.

Plaintiff's attempt to distinguish *Orr* from the case at hand are unpersuasive. The *New Times* article, like the article in *Orr*, discloses the facts surrounding the charge made against Cianci. While plaintiff asserts that the article "completely distorts and misrepresents the facts," Cianci has admitted many of the basic facts stated in the article. The *New Times* article, like the article in *Orr*, does not itself make an affirmative accusation of criminal activity, and instead merely reports Redick's charge and the charge's underlying facts to the reader. Finally, the fact that the *New*

*Times* article reported the charges of an individual which were made twelve years previously, in contrast to the current indictment in *Orr*, is of no constitutional significance. "[A]s a matter of constitutional law . . . a charge of criminal conduct, no matter how remote in time or place can never be irrelevant to an official's or a candidate's fitness for office." *Monitor Patriot Co. v. Roy, supra,* 401 U.S. at 277, 91 S.Ct. at 628.

In summary, the court holds that to the extent that the *New Times* article may imply or express an opinion that Cianci was guilty of rape or of making an improper payoff to avoid prosecution, such opinion is fully protected under the first amendment and may not be the basis of a libel action.

In reaching this holding, the court need not rely upon the "actual malice" standard of *New York Times v. Sullivan*—in fact, defendants quite properly reserved the right to raise this issue in a subsequent motion. Similarly, the court need not rely upon the defendants' argument that those facts in the article which have not been admitted as true are constitutionally protected as neutral reportage. As the neutral reportage protection does not appear to apply in cases involving "actual malice," at least in the Second Circuit, this argument would best be reserved along with the *New York Times v. Sullivan* argument. *See Goldwater v. Ginzburg,* 414 F.2d 324, 337 (2d Cir. 1969), *cert. denied,* 396 U.S. 1049, 90 S.Ct. 701, 24 L.Ed.2d 695 (1970).

*Conclusion*

The court, in deciding the present motion, finds nothing in the *New Times* article which can be the basis for this libel action. The article does not state that Cianci was guilty of rape; it does not state that he made an improper payoff to avoid prosecution. At the very most, the article somehow implies an opinion based upon the facts stated in the article; nowhere does the article represent that any such opinion is based on undisclosed facts. Accordingly, the article is constitutionally protected as a matter of law, and the complaint in this action must be dismissed. The Second Circuit has

noted in reviewing the constitutional principles in *Hotchner v. Castillo-Puche, supra,* 551 F.2d at 913:

These strict tests may sometimes yield harsh results. Individuals who are defamed may be left without compensation. But excessive self-censorship by publishing houses would be a more dangerous evil. Protection and encouragement of writing and publishing, however controversial, is of prime importance to the enjoyment of first amendment freedoms.