CINKER, INC., a Nebraska corporation d/b/a Master Cycle, Plaintiff,

v.

NORTHERN GAS COMPANY, INC., a Wyoming corporation, and Laramie Newspapers, Inc., a Wyoming corporation, Defendants.

No. C83–0250–B.

United States District Court, D. Wyoming.

Nov. 22, 1983.

Douglas J. Moench, Cheyenne, Wyo., for plaintiff.

Michael J. Sullivan, Casper, Wyo., for Northern Gas Co.

Byron Hirst and Glenn Parker, Cheyenne, Wyo., for Laramie Newspapers.

## ORDER GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

BRIMMER, District Judge.

The above-entitled matter having come before the Court upon the Defendants' Motions for Summary Judgment; the Plaintiff appearing by and through its attorney, Douglas J. Moench, Esq., the Defendant, Northern Gas Company, Inc., appearing by and through its attorney, Michael J. Sullivan, Esq., and the Defendant, Laramie Newspapers, Inc., appearing by and through its attorneys, Byron Hirst, Esq., and Glenn Parker, Esq.; and the Court having given the Plaintiff leave to take the depositions of Robert Wilson, the managing editor of the Laramie Boomerang, and Robert Allbaugh, the publisher of the Lara-

mie Boomerang; and the Court having reviewed the briefs in support of and in opposition to the motions and having reviewed all materials on file herein, including said depositions, and now being fully advised in the premises, the Court makes the following findings of fact and conclusions of law:

The incidents that gave rise to this action occurred on May 26, 1983 and again on June 8, 1983 when an article was published in the Laramie Daily Boomerang. The article read as follows:

## NORTHERN GAS GIVES WARNING

Northern Gas Company wishes to warn Laramie residents of a man trying to sell a suspicious "device" which he claims will cut gas bills by 50 percent.

Jerry Atchley, of Northern Gas said his company heard from three people Wednesday of a man reportedly representing a firm from Cheyenne offering a device which would supposedly attach to any kind of furnace.

Atchley said, however, he knows of no kind of device which could do such a thing. He added that the man left no business card with the people contacted, and only showed them "diagrams" and quoted a price of $1,200 for the device.

He said the man never even looked at the furnaces of the people contacted.

He said Northern Gas told the Laramie Police Department of the incidents.

Following the June 8, 1983 publication, the newspaper also published a press release of the Plaintiff that condemned the warning given by Northern Gas.

Both of the Defendants have filed affidavits in support of their Motions to Dismiss which have been converted into Motions for Summary Judgment. Defendant Northern Gas has filed, inter alia, an affidavit by Jerry Atchley in which he states that on May 25, 1983 he was contacted by a Myrl Woodland who informed him of the information in the newspaper article. Further, he reveals that he told Steve Coe, a reporter with the newspaper, of his conversation with Mrs. Woodland. Mrs. Woodland's affidavit also has been filed and she repeats what was reported in the article.

Defendant Laramie Boomerang has filed the affidavit of Robert Wilson, the managing editor, in which he states that he did not know the name of the Company described in the article until after both articles were published. The reporter Steve Coe allegedly asked Jerry Atchley what the name of the company was and was told by Atchley that he did not know. In the depositions conducted by counsel for the Plaintiff after the hearing on these motions, both Robert Wilson and Robert Allbaugh reiterate that they did not know the identity of the company described in the article until after the article was published on June 10, 1983. Robert Wilson further stated that the article was published the second time because it was "still news" because "the city police department was receiving complaints about the same thing...."

The Plaintiff has filed a number of affidavits in opposition to the Motion for Summary Judgment. In one affidavit, Clark Addison, the president of the Plaintiff company, states that no one from Master-cycle told Mrs. Woodland that their product would cut fuel costs by 40 to 50 percent, although Addison does not state how he came by this information.

Defendants assert two grounds for summary judgment that are relevant to this order. First, they assert that the articles are not actionable because the Plaintiff is not identified. Second, they assert that the articles are protected by the fair comment privilege. The Plaintiff argues that even though the Plaintiff was not named, people knew who the article described. Also, the Plaintiff contends that the issue of the degree of culpability required in a libel action by a private party against a media defendant should be certified to the Wyoming Supreme Court, because the Wyoming Supreme Court has never ruled on the issue.

▆ Courts have been keenly aware of the advantages of summary judgment in a libel action because these actions potential-

ly have a chilling effect on the free press. In practice, summary judgment has been frequently granted. Ultimately, however, this Court believes that neither the grant nor the denial of a motion for summary judgment should be preferred in a libel action. The potential chilling effect of a lawsuit simply must be disregarded. *Yiamouyiannis v. Consumers U. of United States*, 619 F.2d 932 (2d Cir.), cert. denied, 449 U.S. 839, 101 S.Ct. 117, 66 L.Ed.2d 46 (1980); *Schultz v. Newsweek, Inc.*, 668 F.2d 911, 917 (6th Cir.1982). This Court has applied the same standard for summary judgment in this case that it would in any other case, for summary judgment is a drastic remedy that is appropriate only if there exists no genuine issue of material facts. *Luckett v. Bethlehem Steel Co.*, 618 F.2d 1373, 1383 (10th Cir. 1980).

The decision in *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 94 S.Ct. 2997, 41 L.Ed.2d 789 (1974) lent constitutional significance to the common law fair comment privilege. In *Gertz*, the Court noted that, "However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." 418 U.S. at 339. Cases following *Gertz* have broken assertions into the categories of fact and opinion with this latter category being broken down into opinions that imply the existence of undisclosed defamatory facts and opinions that are accompanied by the facts that give rise to them. Courts have recognized that the demands of a free press in a democracy require that opinions, that are accompanied by the facts upon which they are based, are not actionable. *Restatement (Second) of Torts*, § 566 (1977).

This principle has been amplified and applied by many cases since *Gertz*. In *Orr v. Argus Press Co.*, 586 F.2d 1108 (6th Cir. 1978), cert. denied, 440 U.S. 960, 99 S.Ct. 1592, 59 L.Ed.2d 773 (1979), a newspaper was sued for libel when it used the following phrases to describe the indictment of the promoter of a shopping mall: "phoney shopping mall", "34 counts of fraud", and "alleged swindle". The court, however, reversed a judgment for the plaintiff, ordered dismissal, and held that the characterizations of the plaintiff's activities could not be the basis for libel because the newspaper had accurately reported the arrest and indictment. In *Rinaldi v. Holt, Rinehard, and Winston, Inc.*, 42 N.Y.2d 369, 397 N.Y.S.2d 943, 366 N.E.2d 1299, cert. denied, 434 U.S. 969, 98 S.Ct. 514, 54 L.Ed.2d 456 (1977), the Court of Appeals of New York also ordered summary judgment to be granted to the defendant after a state district court judge had brought a libel action against a publisher based on a book in which the judge had been called incompetent and probably corrupt. The court held that "Opinions, false or not, libellous or not, are constitutionally protected and may not be the subject of private damage actions, provided that the facts supporting the opinions are set forth." 397 N.Y.S.2d at 950, 366 N.E.2d at 1306. The court emphasized that its ruling was necessary so that public debates remained "open and unfettered". Other courts have followed this distinction between fact and opinion and have protected "pure" expressions of opinion. *National Rife Ass'n v. Dayton Newspapers, Inc.*, 555 F.Supp. 1299 (S.D. Ohio 1983); *Cianci v. New Times Publishing Co.*, 486 F.Supp. 368 (S.D.N.Y.1979); *Edwards v. National Audubon Society, Inc.*, 556 F.2d 113 (2d Cir.), cert. denied, 434 U.S. 1002, 98 S.Ct. 647, 54 L.Ed.2d 498 (1977); *Ollman v. Evans*, 479 F.Supp. 292 (D.C.1979); *Mashburn v. Colin*, 355 So.2d 879 (La.1977).

■ The Plaintiff in this case has not disputed any of the facts reported in the article as far as what the callers told Mr. Atchley or what Atchley told the newspaper except for the affidavit that states that no one promised to cut gas bills by 50 percent. Thus, the vast majority of information in the article can not be considered libellous. Truth is a complete defense to libel. 50 *Am.Jur.2d*, Libel and Slander, § 179. Both in oral argument and in its brief, Plaintiff, however, has objected inter alia to the editorial choice of terms in the article: "suspicious", "device", "reported-

 

ly", and "warn". The use of these terms, however, is no different than the use of the terms in *Orr v. Argus Press*, supra. The Plaintiff also vehemently objects to the assertion in the article that Atchley reported the incidents to the police. Nonetheless, Plaintiff does not dispute the truth of this assertion. In addition, the reasons for Atchley's decision to tell the police are set forth in the article. Therefore, this assertion can not be considered libellous. The only part of the article that could be considered libellous following *Gertz* is Atchley's statement that he did not know of a device that will cut fuel consumption by 50 percent. Nonetheless, it is clearly understood that he is utilizing his experience with his employer. Furthermore, the Plaintiff does not dispute the fact that its device will not cut fuel consumption by 50 percent. The day simply has not come when an expression of ignorance can be the basis for a libel action.

Given the preceding facts this case can be decided as a matter of law. Whether or not an assertion could be characterized as fact or opinion and whether an opinion implies undisclosed defamatory facts are questions of law. *Restatement (Second) of Torts* § 566 Comment C; *Cianci v. New Times Publishing Co.*, supra; *Rinaldi v. Holt, Rinehard, and Winston, Inc.*, supra.

■ The Plaintiff's insistence on certification to the Wyoming Supreme Court confuses the question of fault with the constitutionalized fair comment privilege. This Court does not need to reach the issue of fault to decide this case. This Court therefore holds that the assertions in the articles were either true or protected by the First Amendment under the fair comment privilege.

■ There is yet another basis for the Court's decision to grant the Defendants' Motions for Summary Judgment. It is black letter law that defamatory words are actionable only if they refer to some ascertained or ascertainable person. 50 *Am.Jur.2d*, Libel and Slander, § 143. The article in question does not refer to the Plaintiff by name, and its description of the entity selling the energy saving device is cursory. In addition, there are an insufficient number of descriptive details that would distinguish the Plaintiff as the subject of the article as opposed to any number of other businesses. Further, by virtue of the Plaintiff's own contentions, at least one of the few details in the article does not refer to the Plaintiff; the article refers to a man and not a company and implies that an individual is selling the devices. Therefore it is

ORDERED that the Defendants' Motions for Summary Judgment be, and the same hereby are, granted, and the above-entitled case is hereby dismissed with prejudice. It is further

ORDERED that the Plaintiff's motions subsequent to the hearing on the Motions for Summary Judgment shall be disregarded because they are in violation of the Court's directives at that hearing and because the Court has granted the motions described in this order.