STEVENS, Respondent, vs. MORSE, Appellant.

*December 12, 1924—January 13, 1925.*

*Libel: Conditional privilege: Newspaper article: Fair criticism:
Limits: Malice.*

1. A newspaper article which charged plaintiff, whose occupa-
   tion is alleged to be that of a farmer and an industrial
   organizer and a student of advanced methods of farming and
   marketing, with being an unsuccessful farmer and utterly
   ignorant of the fundamentals and practice of his business,
   has a tendency to hold plaintiff up to public ridicule, hatred,
   and contempt, affects him in his business, and is libelous
   *per se.* p. 503.                    ＼

2. Conditional privilege, as regards newspaper activity, does not
   go beyond fair criticism, and does not extend to false state-
   ments of fact or unjust inferences, taunts, or contemptuous
   phrases. p. 503.

3. The article, the general tone of which evinces hatred and con-
   tempt toward the plaintiff, and which was not published in a
   spirit of fair criticism or designed for the public good, but
   to humiliate and degrade the plaintiff, is not conditionally·
   privileged. p. 503.

4. The complaint having charged that the article was not only
   false but maliciously published, the defense of conditional
   privilege was not available. p. 503.

APPEAL from an order of the circuit court for Pierce
county: GEORGE THOMPSON, Circuit Judge. *Affirmed.*

The appeal is from an order overruling a demurrer to the
plaintiff's complaint.

The cause was submitted for the appellant on the brief of
*Knowles & Doolittle* of River Falls, and for the respondent
on that of *P. A. & R. R. Williams* of Marshfield.

DOERFLER, J.   The action is one for libel.   The complaint
alleges, among other things, the following:

"I. . That at the time hereinafter mentioned the plaintiff
was a farmer, industrial organizer, and student and investi-
gator of advanced methods in farming and marketing, re-
siding in St. Croix county, Wisconsin.

"II. That at the time hereinafter mentioned the defendant was the editor, publisher, and proprietor of the River Falls Journal, a newspaper of general circulation published at River Falls, Pierce county, Wisconsin.

"III. That on the 23d day of August, A. D. 1923, the defendant wilfully and maliciously composed and published concerning the plaintiff, with intent to injure the plaintiff in reputation, standing, and business, and to hold plaintiff up to public ridicule, contempt, and scorn, in said newspaper, the following false and defamatory matter, to wit:

" 'Pat Stevens, St. Croix county, harangued a meeting in Erin lately and wheedled out of his audience a few signatures to a set of resolutions which called for a farmers 'strike' Sept. 1. Pat told his farmer-friends a lot of 'terrible' things and then explained just how everything could be remedied. Not many, if any, real farmers paid him the slightest attention, but of course that wouldn't bother Pat, for he got his satisfaction out of being THE speaker at a meeting. And it is surprising to note that Pat has been criticised for presumption. One critic says that while 'Pat is one of the best known little talkers in the county,' he is also, 'be it known, one of the poorest farmers anywhere.' 'If every one farmed as Pat does, there would be no need of talking about "curtailing production" because there'd be no production to curtail.' But his critics should know by this time that Pat's very ignorance of the fundamentals and the practice of his subject puts him in line for promotion as a wizard and prophet according to present-day standards in politics. In Wisconsin the political slogan is, 'If Mendota don't get 'em, Madison must.' . . .' "

To this complaint the defendant entered a general demurrer, which demurrer was overruled by the court. Defendant's counsel argue, first, that the published article was not such as was calculated to subject the plaintiff to public hatred, ridicule, or contempt; and secondly, that as an industrial organizer and student and investigator of advanced methods of farming and marketing, the plaintiff was engaged in an occupation of a public nature, in which the public was interested, and that the published article was therefore privileged, and constituted fair criticism.

In the case of *Williams v. Hicks P. Co.* 159 Wis. 90, 150 N. W. 183, it is held: "If a newspaper article naturally tends to make a person appear ridiculous or contemptible or a subject of hatred, or to disgrace him in society or injure him in his business, the right .to recover general damages follows as a matter of course, in the absence of truth as a justification or of circumstances of legal excuse."

The complaint first charges the statements in the article as false and malicious. While the plaintiff's occupation is that of a farmer and an industrial organizer and student and investigator of advanced methods of farming and marketing, the article charges him, in substance, with being an unsuccessful farmer and being utterly ignorant of the fundamentals and practice of his business. What is here said with respect to charges made against him as a farmer is also applicable to plaintiff's pursuit as an industrial organizer and as a student and investigator of advanced methods of farming and marketing. How it is possible for one to either possess or to gain or maintain any prestige as a student or an investigator of methods of farming or marketing farm products while being utterly ignorant of the fundamental principles of farming, it is difficult to conceive. The plaintiff, by this article, is published to the world as a mere pretender, as one who is glib in speech but as a matter of fact knows nothing whatsoever of the subject whereof he pretends to deal; as an impostor; as a total failure as a farmer. The article closes with the sentence: "In Wisconsin the political slogan is, 'If Mendota don't get 'em, Madison must.'" This latter statement is not solely made with reference to the public in general, but with reference to the subject of the article, the plaintiff, and the plain meaning thereof is that if the plaintiff has sufficient intelligence to escape being confined in the insane asylum, that then he is a fit subject for a political office in Madison. Mendota is known solely because one of the state institutions for the insane is there located. Madison is the seat of government

of the state. The article clearly has a tendency to hold the plaintiff up to public ridicule, hatred, and contempt, and it also affects him in his business as a farmer, and in the other occupations alleged in the complaint. It is therefore libelous *per se*.

It is further argued by defendant's counsel that plaintiff's business is that of an industrial organizer and a student and investigator of advanced methods of farming and marketing, and that such occupation is public in its nature, and that therefore the published article is not libelous. "Conditional privilege as regards newspaper activity does not go beyond fair criticism in respect to the relations of persons to the public and report of facts. It does not extend to false statements of fact or unjust inferences, nor taunts, nor contemptuous or insulting phrases." *Williams v. Hicks P. Co.,* *supra.*

A careful reading of the article cannot fail to impress the reader with the thought that it does not constitute fair criticism. Its general tone evinces hatred and contempt towards the plaintiff. No disinterested person reading the article can come to the conclusion that it was printed in a spirit of fair criticism or designed for the public good. Its object is to humiliate and degrade the plaintiff and to hold him up to the public as an object of ridicule and contempt. Besides, the complaint not only charges that the libelous article is false but that it was published maliciously. Under such circumstances the defense of conditional privilege cannot prevail. 17 Ruling Case Law, p. 352, § 100.

*By the Court.*—Order affirmed.