No. 84–1524. OLLMAN v. EVANS ET AL. C. A. D. C. Cir. Certiorari denied.

JUSTICE REHNQUIST, with whom THE CHIEF JUSTICE joins, dissenting.

In March 1978, petitioner, then a professor of political science at New York University, was nominated by a departmental search

committee to head the Department of Government and Politics at the University of Maryland in College Park. The committee's recommendation proved to be highly controversial, largely because petitioner was an avowed Marxist. Petitioner's appointment was approved by the Provost of the University and the Chancellor of the College Park Campus, but was eventually overruled by the President of the University.

While this controversy was going on, respondents, nationally syndicated columnists, devoted one of their columns to it. In the course of the article, they made a number of statements about petitioner, including a description of his principal scholarly work as "a ponderous tome in adoration of the master," and then went on to say:

> "Such pamphleteering is hooted at by one political scientist in a major eastern university, whose scholarship and reputation as a liberal are well known. 'Ollman has no status within the profession, but is a pure and simple activist,' he said."

Petitioner sued respondents for libel in the United States District Court for the District of Columbia, and that court granted summary judgment for respondents. 479 F. Supp. 292 (1979). On appeal, the Court of Appeals for the District of Columbia Circuit sitting en banc affirmed the judgment by a vote of six to five, producing three separate opinions concurring in the affirmance, and four dissenting opinions. 242 U. S. App. D. C. 301, 750 F. 2d 970 (1984).

The Court of Appeals rested its decision entirely on the First Amendment to the United States Constitution, and held that this statement about petitioner—that he had no status within his profession—could simply not form the basis of an action for defamation in the light of that Amendment. There was no question as to whether petitioner could meet the requirement of "malice" under *New York Times Co.* v. *Sullivan*, 376 U. S. 254 (1964), since the case had never been tried to a jury. The Court of Appeals majority relied upon a brief passage from our opinion in *Gertz* v. *Robert Welch, Inc.*, 418 U. S. 323, 339–340 (1974). I think that the result reached by the Court of Appeals in this case is nothing less than extraordinary. At the heart of the common law of defamation were a few areas of expression which even when spoken rather than written were regarded as so damaging as to be classified as "slander *per se*" and therefore not to require the proof of any special damages in order to allow recovery. One of these catego-

ries consists of statements which defame the plaintiff in connection with his business or occupation. See, *e. g.*, *November* v. *Time, Inc.*, 13 N. Y. 2d 175, 194 N. E. 2d 126 (1963); *Stevens* v. *Morse*, 185 Wis. 500, 201 N. W. 815 (1924).

Much of the extended treatment of this question in the Court of Appeals was devoted to the question of whether or not this statement was one of "fact" or of "opinion," the implication being that if the statement were one of "opinion" it could not be actionable under any circumstances. But for nationally syndicated columnists to quote an unnamed political scientist as saying that petitioner has "no status within the profession" is far more than the mere statements of opinion traditionally protected by qualified privilege under the common law of libel. Doctors who are disapproved of by other doctors may find solace in the fees paid by their patients; lawyers disapproved of by other lawyers may comfort themselves by the retainers paid by their clients. But the academic who is disapproved of by his peers has no such healthy recourse outside of the profession. There, if ever, the opinion of one's peers is virtually the sole component of one's professional reputation.

The statement from our opinion in *Gertz, supra,* relied upon by the majority in the Court of Appeals was this:

> "Under the First Amendment there is no such thing as a false idea. However pernicious an opinion may seem, we depend for its correction not on the conscience of judges and juries but on the competition of other ideas." 418 U. S., at 339–340.

At the time I joined the opinion in *Gertz, supra,* I regarded this statement as an exposition of the classical views of Thomas Jefferson and Oliver Wendell Holmes that there was no such thing as a false "idea" in the political sense, and that the test of truth for political ideas is indeed the marketplace and not the courtroom. I continue to believe that is the correct meaning of the quoted passage. But it is apparent from the cases cited by petitioner that lower courts have seized upon the word "opinion" in the second sentence to solve with a meat axe a very subtle and difficult question, totally oblivious "of the rich and complex history of the struggle of the common law to deal with this problem." Hill, Defamation and Privacy Under the First Amendment, 76 Colum. L. Rev. 1205, 1239 (1976).

The scholarly treatment of this subject by the various opinions in the Court of Appeals comprises 148 pages in the appendix to the petition for certiorari in this case. Obviously the passage from *Gertz* quoted above has led the majority of that court to the conclusion that respondents' article is not actionable as a matter of law. But if one draws back for a moment, and considers the passage in context and in the light both of the First Amendment and the history of common-law libel, see R. Sack, Libel, Slander and Related Problems 158 (1980), I find it impossible to disagree with Judge Wald's characterization:

> "[T]he columnists' statement that 'Ollman has no status within the profession, but is a pure and simple activist' is an assertion of fact for which its authors can be made to answer, consistent with the requirements of the [F]irst [A]mendment, in a suit for libel." 242 U. S. App. D. C., at 363, 750 F. 2d, at 1032.

I would grant the petition for certiorari in this case.