**Stephen I. KARP, Plaintiff,**

v.

**HILL AND KNOWLTON, INC., Defendant.**

**No. 85 Civ. 7841 (GLG).**

United States District Court, S.D. New York.

March 25, 1986.

Butler, Fitzgerald & Potter, P.C., New York City (Stuart Potter and James M. Davis, of counsel), for plaintiff.

Kornstein, Veisz & Wexler, New York City by Howard S. Veisz and Marian E. Lindberg, for defendant.

## OPINION

GOETTEL, District Judge:

The events that culminated in the statements that are the subject of this action for defamation began in February 1985, when Buckingham Corporation ("Buckingham"), an importer and distributor of wines and liquors, commenced an action against the plaintiff herein, Steven I. Karp ("Karp"), a former senior vice-president of Buckingham. The suit charged that, while in Buckingham's employ, Karp had surreptitiously agreed with two of Buckingham's suppliers to form a new corporation to distribute their products independently of Buckingham. In addition, it charged that Karp had misappropriated confidential information and trade secrets from Buckingham.[1] The complaint against Karp purported to state

claims for breach of fiduciary duty, tortious interference with contract, breach of a continuing duty of confidentiality, unfair competition, misappropriation of a corporate opportunity, and tortious interference with prospective business opportunity.

After filing the action, Buckingham quickly moved by order to show cause for a preliminary injunction (1) enjoining Karp from entering into any relationship with Buckingham's former suppliers; (2) enjoining him from divulging any confidential trade information belonging to Buckingham; and (3) requiring Karp to return to Buckingham all Buckingham documents in his possession. In a memorandum decision dated March 15, 1985, this Court concluded that Buckingham had demonstrated a likelihood of success on most, if not all, of its claims against Karp. *Buckingham v. Karp*, No. 85–0931, slip op. (S.D.N.Y. March 15, 1985). It further concluded that Buckingham would suffer irreparable harm were Karp to continue to solicit its suppliers and to use its confidential documents and information. The motion for preliminary relief was, therefore, granted.

On May 22, 1985, a divided Court of Appeals for the Second Circuit reversed our decision. Although unpersuaded by most of Karp's substantive arguments, the Court of Appeals did not believe that injunctive relief was warranted since irreparable harm had not been demonstrated. *Buckingham Corp. v. Karp*, 762 F.2d 257 (2d Cir.1985).

On the date of the Court of Appeals' decision, defendant Hill & Knowlton, Buckingham's public relations agent, composed the press release that is the subject of this action. The release stated in full:

The U.S. Court of Appeals, Second Circuit, yesterday vacated a preliminary injunction against Stephen I. Karp. John W. Anderson, president and chief execu-

---

**1.** The circumstances underlying the *Buckingham v. Karp* action are further detailed in this Court's memorandum decision dated March 15, 1985, *Buckingham Corp. v. Karp*, No. 85 Civ. 0931, slip op. (S.D.N.Y. March 15, 1985) (memo-randum decision), and this Court's opinion dated March 18, 1986, *Whitbread (US) Holdings, Inc. v. Baron Phillippe De Rothschild, S.A.*, 630 F.Supp. 972 (S.D.N.Y. 1986) (opinion).

tive officer of Whitbread North America, Inc., today issued the following reply:

Yesterday's decision in no way questions the merits of our case against Mr. Karp.

The ruling supports our claims that Mr. Karp defrauded Buckingham and that substantial relief should be granted. The Court of Appeals simply said that the misappropriation of confidential documents and information was, in and of itself, insufficient to justify a preliminary injunction against Mr. Karp *before a trial on the merits.*

The Appellate Court did not question the District Court's finding that Buckingham is likely to succeed in demonstrating that Mr. Karp breached his fiduciary duty to the company; indeed, the majority opinion acknowledged that it was "unpersuaded by most of Mr. Karp's arguments." The court went so far as to suggest that Buckingham would do better to seek permanent injunctive relief and monetary damages from Mr. Karp in a trial on the merits.

We will continue to pursue vigorously our actions against Mr. Karp, Rothschild, Alko, and Abraham and Joel Buchman.

Defendant's Memorandum in Support of Motion to Dismiss, Exhibit A (emphasis in original).

The following morning, a Hill & Knowlton employee read the release over the phone to Patricia Kennedy, the publisher of Alcoholic Beverage Executives' Newsletter.

Ms. Kennedy incorporated portions of the press release in an 11 paragraph article in the May 24 issue of the newsletter.

Karp brought this action for libel against Hill & Knowlton on October 4, 1985. The complaint alleged, *inter alia,* that Hill & Knowlton's statement that "[t]he ruling supports our claim[ ] that Mr. Karp defrauded Buckingham....," later incorporated in Ms. Kennedy's article, defamed Karp.[2]

Hill & Knowlton now moves to dismiss this action on two grounds.[3] First, it argues that the statement in issue is absolutely privileged within the meaning of section 74 of the New York Civil Rights Law as a "fair and true report of [a] judicial proceeding." N.Y.Civ.Rights Law § 74 (McKinney 1976).[4] It also contends that the statement is a nondefamatory expression of opinion that cannot give rise to a libel claim. We find, for the reasons stated below, that these two privileges immunize Hill & Knowlton from this action for defamation.

### I. *Discussion*

Hill & Knowlton's statement, "The ruling supports our claim[s] that Mr. Karp defrauded Buckingham....," actually contains two potentially libelous assertions. The first is that Buckingham had claimed that Karp defrauded it. The second is that the Court of Appeals' ruling supported this claim. The twofold nature of the defend-

---

**2.** The second count of the complaint wrongly alleged that Hill & Knowlton distributed and published a second press release stating that, "The appeals court ... termed Karp's behavior 'reprehensible'." The plaintiff now requests an order, pursuant to Fed.R.Civ.P. 41(a)(2) dismissing its second claim without prejudice this claim and granting it 120 days to determine whether to allege any additional claims. The Court will dismiss the second claim without prejudice, as the plaintiff requests. Since this opinion and order dismisses the plaintiff's only other claim, the request for a 120 day extension is no longer appropriate and is denied.

**3.** Both parties have presented matters outside of the pleadings and have had an opportunity to respond to those matters presented by the other side. The Court, therefore, treats this as a mo-

tion for summary judgment. *See* Fed.R.Civ.P. 12(b)(6).

**4.** The text of section 74 reads as follows:

A civil action cannot be maintained against any person, firm or corporation, for the publication of a fair and true report of any judicial proceeding, legislative proceeding or other official proceeding, or for any heading of the report which is a fair and true headnote of the statement published.

This section does not apply to a libel contained in any other matter added by any person concerned in the publication; or in the report of anything said or done at the time and place of such a proceeding which was not a part thereof.

N.Y.Civ.Rights Law § 74 (McKinney 1976).

ant's statement is critical to our analysis of the defendant's motion.

### A. Civil Rights Law § 74

Where, as here, the essential judicial documents—in this case, the complaint and the Second Circuit's opinion—are before us, it is for the Court, in the first instance, to decide whether a publication is protected under section 74 as a fair report of those documents.[5] *Phillips v. Murchison*, 252 F.Supp. 513, 520 (S.D.N.Y.1966), *aff'd in part and rev'd in part*, 383 F.2d 370 (2d Cir.1967), *cert. denied*, 390 U.S. 958, 88 S.Ct. 1050, 19 L.Ed.2d 1154 (1968); *George v. Time, Inc.*, 259 App.Div. 324, 19 N.Y. S.2d 385, 386 (1st Dep't 1940), *aff'd*, 287 N.Y. 742, 39 N.E.2d 941 (1942) ("[T]he issue as to whether the article was a fair and true report was an issue of law for the court."); *Ford v. Levinson*, 90 A.D.2d 464, 454 N.Y.S.2d 846 (1st Dep't 1982) (same); *Gurda v. Orange County Publications Division of Ottoway Newspapers, Inc.*, 56 N.Y.2d 705, 436 N.E.2d 1326, 451 N.Y.S.2d 724 (1982), *adopting*, 81 A.D.2d 120, 439 N.Y.S.2d 417, 421 (2d Dep't 1981) (Mollen, J., concurring in part and dissenting in part) (same). Only if the Court determines that an issue of fact remains does the question become one for the jury. In this instance, the Court is able to resolve these issues as a matter of law.

#### 1. "The ruling supports ..."

■ Hill & Knowlton's statement as to the import of the Second Circuit's ruling is unprotected by section 74. That section immunizes fair and true reports of judicial proceedings in order to "... encourage the dissemination of information concerning the judicial branch of government and thereby ... serve[s] the public interest 'in having proceedings of courts of justice public, not secret, for the greater security thus given for the proper administration of justice.'" *Gurda v. Orange County Publications Division, supra*, 439 N.Y.S.2d at

424 (quoting *Lee v. Brooklyn Union Publishing Co.*, 209 N.Y. 245, 248, 103 N.E. 155 (1913)). Hill & Knowlton's one word assessment of the Second Circuit's opinion does not publish that opinion, or otherwise expose the public to the workings of the judicial system. Rather, it conclusionally evaluates the circuit court's opinion. The Civil Rights Law does not protect such bald-faced commentary about the judicial branch and the proceedings therein. *Freeze Right Refrigeration and Air Conditioning Services, Inc. v. City of New York*, 101 A.D.2d 175, 475 N.Y.S.2d 383, 388–89 (1st Dep't 1984); *see also Branca v. Mayesh*, 101 A.D.2d 872, 476 N.Y.S.2d 187, 188–89 (2d Dep't 1984) (Implicitly holding section 74 inapplicable to commentary.).

#### 2. "our claim[ ] that Karp defrauded Buckingham...."

■ When a report of a pleading is the subject of a request for immunity under section 74, a comparison of the pleading and the subsequent report of that pleading is the starting point for the analysis. *See*, *e.g.*, *Ford v. Levinson*, *supra*, 454 N.Y.S.2d at 847; *Phillips v. Murchison*, *supra*, 252 F.Supp. at 520. "For a report to be characterized as 'fair and true' within the meaning of [section 74] ... it is enough that the substance of the [report] be substantially accurate." *Holy Spirit Association for the Unification of World Christianity v. New York Times Co.*, 49 N.Y.2d 63, 399 N.E.2d 1185, 1187, 424 N.Y.S.2d 165, 167 (1979).

Hill & Knowlton claims that it accurately described the contents of Buckingham's complaint. Karp, in turn, asserts that Hill & Knowlton inaccurately depicted the complaint, which did not in fact assert a claim for fraud. However, the absence of an explicit allegation of fraud is not dispositive. Section 74 does not require that a defendant report the exact words of the complaint or the exact language of each count. Although Buckingham did not pur-

---

5. The protections of section 74 extend to pleadings as well as to transcripts and live proceedings. *Branca v. Mayesh*, 101 A.D.2d 872, 476 N.Y.S.2d 187, 188 (2d Dep't 1984), *aff'd*, 63 N.Y.2d 994, 473 N.E.2d 261, 483 N.Y.S.2d 1011 (1984).

port to state a claim for fraud, Hill & Knowlton's characterization of Buckingham's claim was substantially accurate.

Although the complaint did not purport to allege a claim for fraud, it alleged facts sufficient to support such a claim. In order to state a claim for fraudulent concealment, a plaintiff must allege "[k]nowledge, a relationship between the parties that creates a duty to disclose, and intent to deceive and defraud by non-disclosure." *Fidenas A.G. v. Honeywell, Inc.,* 501 F.Supp. 1029, 1039 (S.D.N.Y.1980) (citing 24 N.Y.Jur. Fraud and Deceit §§ 104–106 (1962)). The complaint alleged each of these elements. Buckingham's complaint alleged that Karp failed to disclose his agreement with Rothschild and Alko to his employer, to whom he owed the highest fiduciary duty, *Maritime Fish Products, Inc. v. World-Wide Fish Products, Inc.,* 100 A.D.2d 81, 474 N.Y.S.2d 281, 286 (1st Dep't 1984). Karp allegedly intended his omission to induce the sale of Buckingham. Had damages, and not injunctive relief, been the requested remedy, fraud might well have been a stated cause of action. Indeed, many claims for breach of fiduciary duty are easily transformed into claims for fraud by non-disclosure.

Our decision to immunize the defendant's characterization of the complaint is consistent with earlier constructions of section 74. These decisions evidence a judicial willingness to immunize and even encourage flexible characterization of fraud-like conduct. In *George v. Time, Inc., supra,* 19 N.Y. S.2d 385, the plaintiff sued *Time* magazine, which had reported the results of the plaintiff's unsuccessful attempt to assert a copyright claim. In reversing a district court decree in the plaintiff's favor, a Circuit Court had found that the evidence in the copyright action had established beyond question that the plaintiff had not written the contested song. Although the word "fraudulent" appeared nowhere in the Circuit Court's opinion, *Time* reported that the plaintiff's "claim [was] dismissed as fraudulent." The appellate division reversed the trial court's denial of *Time*'s motion, pursuant to section 74, to dismiss the plaintiff's libel claim. The defendant newspaper in *Gurda v. Orange County Publications, supra,* reported that the plaintiff had conveyed property with intent to hinder or delay creditors in violation of section 276 of the New York's Debtor and Creditor Law, the fraudulent conveyance statute. The headline stated, "Judge: Gurdas, builder defrauded firm," and a caption added, "Gurdas, builder fined in fraud case." The body of the article made further references to fraud. The Court of Appeals concluded, as a matter of law, that the use of the words "fraud" and "defrauded" were protected by Civil Rights Law § 74.

Thus, even when the term fraud is not part of the judicial record, the courts will permit its use if it fairly characterizes some aspect of a judicial proceeding. Apparently, the New York courts do not agree with the plaintiff herein that immunizing use of the term "fraud" permits impermissible imputations of criminality that necessarily accompany any allegation of fraud. Moreover, a reasonable reader could only construe Hill & Knowlton's statement as referencing Buckingham's civil action against Karp.[6]

### B. Opinion or Fact

■ The First Amendment precludes expressions of opinion from giving rise to defamation claims. *Mr. Chow of New York v. Ste. Jour Azur S.A.,* 759 F.2d 219, 224 (2d Cir.1985). Whether a statement is opinion or fact is a question of law for the court. *Id.* We are, therefore, left to con-

---

6. In support of his contention that Hill & Knowlton mischaracterized Buckingham's complaint, Karp notes that Hill & Knowlton modified its initial press release to substitute the word "damaged" for the word "defrauded." Although "damaged" may be less objectionable to Karp than "defrauded," the latter term is the subject of this lawsuit and must be evaluated independent of any subsequent changes. Only if the Court found, as a matter of law, that a question of fact remained as to the fairness and truth of Hill & Knowlton's statement, might the subsequent change become relevant. That is not, however, our finding.

sider whether the defendant's statement that the Second Circuit's decision supported its claim against Karp was a statement of fact or opinion.[7] Although the determination is often difficult, we do not believe that to be so in this instance.

In deciding whether a statement is fact or opinion, several factors must be considered.

First, a court should analyze "the common usage or meaning of the specific language" used in the challenged statement.... Second, a court should consider whether the statement is "objectively capable of proof or disproof." ... Third, a court should examine the immediate context in which the statement is made. "The language of the entire column may signal that a specific statement which, standing alone, would appear to be factual is in actuality a statement of opinion." Finally, the court should examine "the broader social context into which the statement fits," ... and "the different social conventions or customs inherent in different types of writing."

*Id.* at 226 (quoting *Ollman v. Evans*, 750 F.2d 970 (D.C.Cir.1984) (en banc), *cert. denied,* ——— U.S. ———, 105 S.Ct. 2662, 86 L.Ed.2d 278 (1985). An analysis of these factors reveals Hill & Knowlton's statement to be opinion.

On its face, the sentence in issue is an expression of opinion, a comment on an ongoing court battle. The average reader is likely to construe it as such. The context of the press release in which the disputed statement appeared also earmarks the statement as opinion. The release identified the speaker as the president of Buckingham, a party to the ongoing litigation. His statement, that he found support in the court's ruling, could reasonably have been understood only as an effort to put the best face on an unfavorable Second Circuit ruling. The still broader context of the *Buckingham v. Karp* litigation reinforces our perception.

[E]ven apparent statements of fact may assume the character of statements of opinion ..., when made in public debate, heated labor dispute, or other circumstances in which an "audience may anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole...."

*Information Control Corp. v. Genesis One Computer Corp.,* 611 F.2d 781, 784 (9th Cir.1980) (quoting *Gregory v. McDonnell Douglas Corp.,* 17 Cal.3d 596, 601, 131 Cal.Rptr. 641, 552 P.2d 425 (1976)). This was such a situation. The allegedly defamatory statement was made to a trade journal that had carried a constant commentary on the Karp situation. Industry executives reading the newsletter would clearly have understood Whitbread's statements as a defensive salvo in this ongoing battle. This was not a factual presentation, but an entry in a spirited debate in which Whitbread was free to take part.

As one interpretation of a relatively complex and lengthy judicial opinion, the statement in question could never be proven right or wrong, much less "true" or "false." Indeed, whether the Second Circuit approved of Buckingham's claims on the merits is still an open question. Because Hill & Knowlton's statement that the Second Circuit's decision supported Whitbread's claims was incapable of being proven false, and because the context in which it was presented earmarked it as such, it was non-actionable opinion.

*Conclusion*

The defendant's motion to dismiss this complaint is granted.

The Clerk will enter judgment accordingly.

SO ORDERED.

---

**7.** Hill & Knowlton's statement that Buckingham had made those claims is a statement of fact.