Cross Riv. Bank v Korangy Publ. Inc. (2025 NY Slip Op 50709(U))

[*1]

Cross Riv. Bank v Korangy Publ. Inc.

2025 NY Slip Op 50709(U)

Decided on April 30, 2025

Supreme Court, New York County

Ramseur, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on April 30, 2025
Supreme Court, New York County

Cross River Bank, Plaintiff,

against
Korangy Publishing Inc., Defendant.

Index No. 157106/2023

Cross River Bank: Daniel Stabile, Esq.; Lisa Coutu, Esq. of Winston & Strawn LLP
Korangy Publishing: David Korzenik, Esq.; Gillian Vernick, Esq. of Miller Korzenik Sommers Rayman

Dakota D. Ramseur, J.

The following e-filed documents, listed by NYSCEF document number (Motion 001) 12, 13, 14, 15, 16, 17, 19, 20, 21, 22, 23, 24, 25, 26, 27, 28, 29, 30, 31, 32 were read on this motion to/for DISMISSAL.
In July 2023, plaintiff Cross River Bank (hereinafter, "CRB") commenced this defamation action against Korangy Publishing Inc., as publisher of The Real Deal. CRB alleges that, on May 12, 2023, The Real Deal published an article about it, entitled "Cross River, emerging lender to NYC dealmakers, in rough waters," which contained nine allegedly defamatory statements concerning a consent order CRB entered into with the Federal Deposit Insurance Corporation ("FDIC"). In this motion sequence (001), Korangy Publishing moves to dismiss the complaint in its entirety pursuant to CPLR 3211 (g) and NY Civil Rights Law §76-a (New York's Anti-SLAPP statute). The motion is opposed. For the following reasons, Korangy Publishing is entitled to dismissal of the complaint.
BACKGROUND
On March 8, 2023, CRB, as a financial institution supervised by the FDIC and the New Jersey Department of Banking, entered into a Consent Order with the FDIC related to its "unsafe or unsound banking practices" in "compl[ying] with applicable fair lending laws and regulations by failing to establish and maintain internal controls, information systems, and prudent credit underwriting practices." (NYSCEF doc. no. 2 at 1, consent order.) Under the Order, CRB was required to undertake a series of detailed corrective actions, which were limited (at least in [*2]CRB's view) to its consumer lending practices as opposed to its commercial real estate lending business. (See id., starting at page 2; NYSCEF doc. no. 21 at ¶8, CRB affidavit in opposition.) The Consent Order was made public on or around April 28, 2023, and on May 12, 2023, The Real Deal published the subject article after various communications with CRB and its counsel. (NYSCEF doc. no. 14, affidavit of Gregory Dool, Korangy editor.) Over the next four days, it then issued three further updates to the article. CRB alleges the following assertions contained in article and its revisions are defamatory:
1) The article's lack of context when referencing to the Consent Order's "unsafe and unsound banking practices" and failing to "establish and maintain internal controls" language;
2) Statement that CRB "has face substantial challenges of late from rising interest rates, cratering cryptocurrency prices, and the expiration of the federal Paycheck Protection Program;"
3) Statement that "the bank's net income drop[ped] by a stunning 73 percent;"
4) Statement that T. Rowe Price "cut the value of its shares in Cross River by 26 percent in December 2022;"
5) Statement that CRB might "pull back on commercial real estate lending as a result of the Consent Order;"
6) Statement referring to CRB's future being in jeopardy;
7) Statement that CRB's "cryptoties having clearly caused regulatory concern; and
8) Quoting source stating, "this is quite a laundry list of shit that Cross River has been doing wrong."
9) Quoting source stating, "I don't know how they're going to keep doing business" (NYSCEF doc. no. 1 at ¶¶21 [a]-[f], 26 [a]-[i].)

 DISCUSSION
Dismissal Under CPLR 3211(g)(1)
Under CPLR 3211 (g) (1), courts are required to grant motions to dismiss for failure to state a cause of action where the moving party has demonstrated that the subject of the action involves "public petition and participation" as defined by §76-a of New York's Civil Rights Law (known as New York's anti-SLAPP statute) unless the responding party "demonstrates that the cause of action has a substantial basis in law or is supported by a substantial argument for an extension, modification, or reversal of existing law." (CPLR 3211 [g] [1].) In turn, §76-a defines an "action involving public participation" as a claim based upon "(a) (1) any communication in a place open to the public or a public forum in connection with an issue of public interest." (Civil Rights Law §76-a.) That same section requires "public interest" be construed broadly and shall mean any subject other than a purely private matter. (Id.) Reading CPLR 3211 (g) (1) and § 76-a together, once the defendant has established that the subject of the action is both (1) based on communications in a public forum, and (2) concerns the public interest, the Court must then switch the burden to the plaintiff to demonstrate that their claim has a substantial basis in the law.
At the pleading stage, once the burden has shifted, neither CPLR 3211 (g) (1) nor § 76-a require the plaintiff to demonstrate a substantial basis in law through "clear and convincing" [*3]evidence. (See Zeitlin v Cohan, 220 AD3d 631, 632 [1st Dept 2023] ["We do not adopt the motion court's finding that a 'clear and convincing' standard is appropriate in assessing the adequacy of plaintiff's pleading on a pre-answer motion to dismiss."]) [FN1]
Instead, "substantial basis" requires "such relevant proof as a reasonable mind may accept as adequate to support a conclusion or ultimate fact." (Smartmatic USA Corp v Fox Corp., 213 AD3d 512, 512 [1st Dept 2023].) In reviewing the sufficiency of a claim under CPLR 3211 (g) (1), courts may consider exhibits and other documents submitted in evidentiary form that would not typically be allowed under a conventional CPLR 3211 (a) (7) motion.
Here, Korangy Publishing has demonstrated, and CRB does not dispute, that this action concerns a matter of public participation under Civil Rights Law §76 as The Real Deal article statements made in a public forum—a newspaper or periodical that publishes real estate news—and concern a matter of public interest—the recent Consent Order with the FDIC. Regarding whether CRB has pled the requisite substantial basis in law to maintain this action, the Court addresses the parties' arguments with respect to each statement below.
Substantial Basis: Statements (1), (8), and (9)
New York Civil Rights Law §74 provides, "a civil action cannot be maintained against any person, firm, or corporation, for the publication of a fair and true report of any judicial proceedingor for any heading of the report which is a fair and true headnote of the statement published." (NY Civ. Rights. Law §74.) To be considered a "fair and true report," the article in question must be substantially true. (Posner v New York Law Publ. Co., 228 AD2d 318, 318 [1st Dept 1996] [finding publisher protected by §76 where article was substantially accurate as it contained only minor inaccuracies]; Saleh v New York Post, 78 AD3d 1149, 1152 [2d Dept 2010] ["the inaccuracies [in the report] cited by the plaintiffs were not so egregious as to remove the article from the protection of §76].) In analyzing the accuracy of the subject statements, the Court of Appeals has also cautioned that accounts of official proceedings should be afforded some degree of liberality and "not parsed and dissected on the basis of precise denotative meanings" of the language employed. (Holy Spirit Asso. For Unification of World Christianity v New York Times Co., 49 NY2d 63, 68 [1979].)
In this context, Korangy Publishing contends that The Real Deal article published direct quotes from the Consent Order—Statement (1)—and "hyperbolic comments" from named sources that opine on circumstances described accurately in the article—Statements (8) and (9)—such that it is entitled to the privilege afforded by §74. By contrast, CRB maintains that the three statements are not "substantially accurate" because the article suggests more serious conduct than actually identified by the Consent Order. (See Daniel Goldreyer, LTD v Van de Wetering, 217 AD2d 434, 436 [1st Dept 1995] ["If the published account, along with the rest of the article, suggests more serious conduct than actually suggested in the official proceeding, then the privilege does not attach as a matter of law"].) From their perspective, the The Real Deal selectively quoted from the opening paragraphs of the Consent Order referring to "unsafe or unsound banking practices," then connected the quotes to an unrelated "string of high-profile [*4]bank failures," and implied that it had engaged in extensive wrongdoing to the point it was "facing imminent financial ruin." (NYSCEF doc. no. 20 at 14-15, CRB's memo in opposition.) Yet, within the article's entire context, Statements (1), (8), and (9)—together with the rest of the purported defamatory statements—do not create, as CRB suggests, "a false narrative that CRB is on the brink failure," that it is "financial unsound" or that it engaged in worse conduct than that for which it was cited.
Although Statement (1) does not fully recite the Consent Order's opening paragraph, the selective quote does not suggest any position on CRB's financial situation and, if anything, it is the Consent Order that suggests conduct which is more serious than what was reported in The Real Deal:
"The FDIC considered the matter and determined, and the Bank neither admits or denies, that it engaged in the unsafe or unsound banking practices related to its compliance with applicable fair lending laws and regulations by failing to establish and maintain internal controls, information systems, and prudent credit underwriting practices in conformance with the Safety and Soundness Standards contained in Appendix A of 12 C.F.R. Part 364, or the violations of the Equal Credit Opportunity Act, 15 U.S.C. § 1691, et seq., as implemented by Regulation B, 12 C.F.R. Part 1002, and the Truth-in-Lending Act, 15 U.S.C. § 1601, et seq., as implemented by Regulation Z, 12 C.F.R. Part 1026, as described in the May 3, 2021 Consumer Compliance Report of Examination (2021 ROE)" (NYSCEF doc. no. 2.)
And while CRB tries to minimize the seriousness of the FDIC Consent Order and instead highlight its limited scope, various other publishers who reported on the matter mirror the position taken in The Real Deal. For example, The American Banker, using nearly identical language, wrote, "The FDIC has slapped Cross River Bank in Teaneck, New Jersey, with a consent order saying it engaged in unsafe or unsound banking practices related to fair lending regulations" and that "if the largest and most sophisticated partner bank [CRB] can get into this much trouble, every partner bank is at risk." (NYSCEF doc. no. 27, American Banker article.) Among other articles cited by Korangy Publishing in its reply papers are articles entitled "FDIC orders Cross River to correct 'unsafe' lending practices" (from Banking Dive, published May 1, 2023); "Crypto-Friendly Lender Cross River Bank Criticized by FDIC" (from the Wall Street Journal, April 29, 2023); and "Cross River Bank Gets FDIC Enforcement Order Over Lending" (from Bloomberg, published April 28, 2023). Moreover, The Real Deal article, immediately after quoting the consulting expert's opinion, referred the reader to the position of CRB and its spokesperson who pointed out that "the order stemmed from a review of the bank's practices in 2021 and said it will have no impact on the bank's existing commercial real estate loan portfolio"—or, in other words, the exact context that CRB now criticizes The Real Deal for omitting.
To the extent that Statements (8) and (9) do not, strictly speaking, report the findings of the Consent Order but instead offer commentary on the proceedings (see Karp v Hill & Knowlton, Inc., 631 F. Supp. 360, 363 [SDNY 1886]), CRB still has not shown that it has a substantial basis to recover thereon. CRB argues that these assertions are, if not outright factual, then at the least actionable mixed opinions. On one level, the statement "this is quite a laundry list of shit that Cross River has been doing wrong" is of the type that cannot be characterized as [*5]either true or false but is instead "rhetorical hyperbole," which would typically make it a nonactionable opinion. (See Thomas H. v Paul B., 18 NY3d 580, 584 [2012]; Bowen v Van Bramer, 205 AD3d 674, 675 [2d Dept 2022].) At the same time, CRB is correct that the statement may be interpreted by some readers as implying extensive wrongdoing based on facts that are not contained in the statement itself, which would be considered a mixed opinion. (See Davis v Boeheim, 24 AD3d 262, 269 [2014] [Where an opinion implies that it is based upon undisclosed facts which justify the opinion, it is actionable].) However, The Real Deal makes it clear that the opinion is based on the Consent Order, which is itself a list of remedial actions the FDIC ordered upon its "determination" that CRB engaged in unsafe and unsound banking practices, all of which were instituted to correct the "violations of law or regulation cited in the 2021 Consumer Compliance Report of Examination." The source of the expert's opinion, the facts upon which the opinion is based, then, is not "unknown to those reading or hearing [the opinion]." (Id.)
"If they have examiners living with them, which is what it looks like, I don't know how they're gonna keep doing businessIt becomes very burdensome when you're under something like this. It's a real problem." CRB contends that this is a mixed opinion because the opinion—I don't know how they're going to continue doing business—requires prior undisclosed knowledge of the burdensome nature of being subject to a consent order. Ignoring that (1) CRB does not deny the statement's antecedent, i.e., that it is subject to additional regulatory scrutiny, and (2) most readers would assume being under a Consent Order would be burdensome and impose a cost on CRB, the term "if" implies that the statement is best understood as conjecture, hypothesis, or speculation. (See Levin v McPhee, 119 F3d 189, 196 [2d Cir. 1997].)
As such, the Court finds that, with respect to these three statements, plaintiff has not shown a substantial basis in law to sustain its claim.
Substantial Basis: Statements (2), (5), and (6)
To distinguish an actionable statement of fact from protected statement of opinion, courts use a three-factor analysis: (1) whether the defamatory words have a readily understood precise meaning, (2) whether the statement are objectively capable of being proven true or false, and (3) whether readers and listeners, in the full social context of the communication, are likely to infer that the statement is an opinion and not fact. (Thomas H, 18 NY3d at 584.)
Statement 2—that CRB faced "substantial challenges of late" from rising interest rates, cratering cryptocurrency prices and the expiration of the federal Paycheck Protection Program ("PPP")—is a protected statement of opinion. The phrase "substantial challenge" (to the extent that it somehow exposes CRB to "contempt, hatred, ridicule, aversion, or disgrace") is not a statement that has a precise meaning that can be proven true or false since the phrase has no quantifiable definition and depends on a subjective viewpoint. Further, in broadly generalizing from the economic environment that factors like rising interest rates, cryptocurrency prices, and the expiration of the PPP program might pose substantial challenges to a firm specializing in financial tech, as The Real Deal does, it is expressing an opinion that, from the surrounding context of the article, is likely to be interpreted as such by its readers. Contrary to CRB's position, no further underlying facts would be needed to assess the basis for such a broad, generalized opinion.
Statement 5 reads in full: "if Cross River pulls back on commercial real estate lending as [*6]a result of the consent order, it could push more multifamily borrowers toward larger banks like JP Morgan, exacerbating what one multifamily broker called a 'gaping hole in the market' left by First Republic's seizure and sale last month." This is another statement that is a protected opinion. The assertion merely speculates as to the future market ramifications should Cross River take actions within its power. Conditional language like "if" and "could" indicate the speaker is not offering a verifiable factual statement but offering a conjecture, hypothesis, or speculation as to future conditions. (Levin, 119 F3d at 196.) That the Consent Order does not require CRB to "pull back" and is limited to its consumer lending practices does not remove the statement from being a subjective judgement concerning what may happen if the hypothetical pullback does occur.
Statements (6) and (7)— "[6] while whispers that the bank's future is in jeopardy are purely speculative, [7] Cross River's crypto exposure has clearly caused regulatory concern"—are protected opinions for the same reasons cited above. Additionally, it is unclear to the Court on what basis Statements 6 and 7, when analyzed within the article's entire context, can be considered defamatory when the gravamen of CRB's complaint is that the article created the misimpression that the bank's financial situation could be imperiled by the Consent Order. (See NYSCEF doc. no. 20 at p 6 [the article "omitted key details to falsely portray that Cross River was financially unsound"], id. at 6 [the article's title "immediately implied that the bank was in jeopardythen connected the Consent Order to recent [bank] failures"]; id. at 22 ["when read in its entirety, the Article leads reasonable readers to believe that Cross River's entire business was at issue and was about to fail based on the Consent Order"].) These statements—placed near the article's conclusion—undermine CRB's theory as to the overarching conclusions to be drawn from the piece.
Substantial Basis: Statements (3), (4), and (7)
Statement (3) refers to CRB's 73% drop in income after the expiration of the PPP program. In his affidavit in support, Gregory Dool, an editor at The Real Deal, demonstrated that this figure, though not reported by the FDIC as originally stated in the article, is actually attributable to a CRB Call Report found on the Federal Financial Institutions Examination Council's ("FEICC") website and linked to on the FDIC webpage. (NYSCEF doc. no. 14 at 7, Dool affidavit.) Korangy Publishing contends that such an inaccuracy is nonactionable since the underlying content is substantially true. CRB does not address the statement specifically in its opposition papers. Likewise, CRB does not contest that Statement (4)—that T. Rowe Price "cut the value of its shares in Cross River by 26%."—is factually true even if, in its view, the drop cannot be attributable to the Consent Order. [FN2]
As to Statement (7), Korangy Publishing contends [*7]that the article is substantially true in asserting that "CRB emerged from the [2008] financial crisis as a key partner in fintech and later cryptocurrency companies as both sectors grew rapidly during the 2010's."
In opposition, CRB maintains that the article's defamatory statements do not fall under the substantial truth doctrine because the publication as a whole has a different effect on the mind of the reader that the truth of anything contained in the Consent Order. It also asserts that the article advances the defamatory inference that the Bank was financially unsound and failure imminent. As the Court intimated above, however, the article does not create the impression that CRB has asserted throughout its opposition. As Korangy Publishing notes, it did not publish the phrases "brink of failure," "financially unsound," and "imminent financial ruin." In fact, the article distances itself from these suggestions by pointing out that they are "pure speculation." After quoting the expert's largely accurate, yet hyperbolic comments, The Real Deal provided readers with CRB's position on the Order, which it also advances in this litigation. CRB argues that it tried to discuss with Korangy Publishing the fact that the Order only applied to its compliance with fair lending laws—which The Real Deal notes: "A spokesperson for Cross Riversaid it will have no impact on the bank's existing commercial real estate loan portfolio." Under these circumstances, CRB has not demonstrated a substantial basis for its defamation claim based on any of the alleged statements identified in its complaint. Accordingly, since CRB has failed to establish a substantial basis for this action, it is entitled to costs and attorneys' fees under New York Civil Rights Law §70-a. (See NY Civ. Rights Law §70-a [1] [a] ["costs and attorney's fees shall be recovered upon a demonstrationthat the action involving public petition and participation was commenced or continued without a substantial basis in fact and law"].)
Accordingly, it is hereby
ORDERED that defendant Korangy Publishing Inc.'s motion to dismiss pursuant to CPLR 3211 (g) is granted in its entirety and the complaint it dismissed; and it is further
ORDERED that a Judicial Hearing Officer ("JHO") or Special Referee shall be designated to hear and report to this Court on the amount of reasonable attorneys' fees defendant is entitled to collect from plaintiff as a result of its motion to dismiss pursuant to CPLR § 3211(g) and NY Civ. Rights Law § 70-a being granted; and it is further
ORDERED that this matter is hereby referred to the Special Referee Clerk for placement at the earliest possible date upon the calendar of the Special Referees Part (Part SRP), which, in accordance with the Rules of that Part (which are posted on the website of this court), shall assign this matter at the initial appearance to an available JHO/Special Referee to hear and report as specified above; and it is further
ORDERED that counsel for defendant shall serve a copy of this order, along with notice of entry, on all parties within ten (10) days.
This constitutes the Decision and Order of the Court.
DATE 4/30/2025
DAKOTA D. RAMSEUR, J.S.C.

Footnotes

Footnote 1:Defendants cite a litany of cases from the trial court level for its position, all of which were decided before Zeitlin v Cohan.

Footnote 2:In its complaint, CRB alleges that the "expiration of the short-term emergency government loan program and the drop in net income resulting in the expiry of the PPP was certain to happen" and not the result of the Consent Order (NYSCEF doc. no. 1 at ¶26 [e].) By implication, the statement evidences the substantial truth of Statement (2) and the article's assertion that CRB faced "significant challenges" from interest rates, cryptocurrency prices, and the PPP's expiration.